STATE OF CONNECTICUT *v.* WILLIE J. PEARY

COTTER, C. J., LOISELLE, BOGDANSKI, LONGO and PETERS, Js.

Argued June 9—decision released September 26, 1978

*Mary V. McCarthy,* for the appellant (defendant).

*George D. Stoughton,* state's attorney, for the appellee (state).

LONGO, J. The defendant was charged in a four-count information with the possession and sale of heroin on two occasions, in violation of General Statutes §§ 19-452 and 19-480 (a). He has appealed to this court from the judgment rendered upon a jury verdict of guilty, assigning many errors in the conduct of the trial.[1] We have carefully examined all of the defendant's claims which deserve review and have found nothing to warrant reversal.

---

[1] This appeal was taken prior to the effective date of Practice Book, 1963, § 629A, which dispensed with the requirement of an assignment of errors, a finding and an appendix in a jury case.

The state's chief witness, a former undercover agent for the capitol region crime squad, testified that on November 2, 1970, he was assigned to try to purchase narcotics from Willie J. Peay,[2] the defendant. The agent met with an informer and together they went to the defendant's apartment in Hartford, where the defendant admitted them. The informer introduced the agent as his cousin. The defendant had about twenty-five glassine envelopes in a cigarette package; he sold two of them to the agent. Those two envelopes were tested and found to contain heroin. On November 6, 1970, the agent returned with the informer to the defendant's apartment and purchased from him two more envelopes which also contained heroin. The defendant denied his presence in the apartment on November 2, and testified that he had not possessed any drugs or sold any drugs to the agent on either of the two dates.

The defendant claims the court erred in not granting a mistrial because of the prosecution's failure to produce the informer as a witness. At the close of the prosecution's case, detectives testified that despite diligent efforts to serve a subpoena, they had been unable to locate the informer at his home or elsewhere. Defense counsel then moved for a mistrial. The motion was denied, but a day's continuance was granted. On the following day the informer was not produced by either side and the mistrial motion was not renewed.

A motion for a mistrial is addressed to the wide discretion of the court; it should be granted if it is apparent to the court that because of some occurrence upon trial the accused cannot have a fair trial

---

[2] As will appear, the designation of the defendant's name on the information is at issue in the case.

and the whole proceedings are vitiated. *State* v. *Hafner,* 168 Conn. 230, 245–46, 362 A.2d 925. We disagree that the informer's absence denied the defendant a fair trial. His testimony was not vital to the state's case, and it is purely speculative for the defendant to insist in the alternative that the informer's testimony would have been favorable to him, as tending to discredit the agent's version of events. See *State* v. *Harris,* 159 Conn. 521, 529, 271 A.2d 74, cert. dismissed, 400 U.S. 1019, 91 S. Ct. 578, 27 L. Ed. 2d 630. The court acted well within its discretion in not declaring a mistrial.

The defendant was cross-examined regarding his means of support, his involvement in narcotics traffic at and near the time of the two alleged sales, and his reasons for keeping five dogs in his apartment. Those questions were relevant and material to matters raised in the defendant's testimony denying the charges against him. The defendant's objections to them were properly overruled. *State* v. *Brathwaite,* 164 Conn. 617, 619–20, 325 A.2d 284.

The prosecution attempted to extend this inquiry into the defendant's background with a series of irrelevant questions tending to show that the defendant had never held a job and that he had a history of involvement in narcotics traffic and of association with narcotics dealers. The court sustained defense counsel's objections and none of the questions was answered. The defendant's complaint on appeal, that the court did not go far enough, but should have ordered a mistrial or instructed the jury to disregard the questions, merits no consideration. The matter was not raised and ruled on in the trial court; *State* v. *Uriano,* 165 Conn. 104, 106, 328 A.2d 679; and any prosecutorial impropriety falls far

short of the serious misconduct needed to bring this case within the "exceptional circumstances" rule of *State* v. *Evans,* 165 Conn. 61, 69, 327 A.2d 576. See *State* v. *Hafner,* supra, 251–53.

The defendant contends that the court should not have permitted the agent and his superior to testify as to their familiarity with the defendant, his apartment building, and his apartment. Specifically, the agent testified that he had seen the defendant on two occasions prior to the heroin sales and had been in his apartment four times. The agent's superior testified that he was well acquainted with the defendant's apartment building and had known the defendant for twelve years.

As both men were experts in the narcotics field, the defendant argues that evidence of their familiarity with him and with his dwelling could have prejudiced the jury and led them to believe that the defendant had been involved in drug-related criminal activities in the past. That evidence, otherwise relevant and material, which tends to link an accused with other crimes does not render it inadmissible, if its probative value outweighs its prejudicial tendency. *State* v. *Ralls,* 167 Conn. 408, 417, 356 A.2d 147. Whether the defendant twice sold heroin to the agent in his apartment was directly at issue in the case. We cannot say that the trial court abused its discretion in determining that the prejudicial effect of the testimony was outweighed by its probative value.

The defendant claims error in various rulings permitting police officers to testify on rebuttal as to efforts to locate the informer and as to whether the defendant had a tenant selling narcotics in his

apartment. The latter testimony, although prejudicial, was in general contradiction of testimony given by the defendant. We find no abuse of discretion in the court's rulings. *State* v. *Fine,* 159 Conn. 296, 301, 268 A.2d 649.

The defendant also complains of related rulings allowing two police officers to testify on cross-examination as to the circumstances of a second arrest of the defendant on a conspiracy charge, shortly after his arrest for the heroin sales. The defendant called the police officers as witnesses in an apparent effort to discredit the factual basis for his arrest on the narcotics charges. The police officers' testimony that the second arrest had an independent basis was within the scope of cross-examination.

Error has been assigned in the admission as evidence for identification purposes of a "mug shot" of front and side views of the defendant. The agent and his superior identified this picture as the one the agent on November 2 and November 6, 1970, had selected from an array of fifteen photographs as being a picture of the man who sold drugs to him on those dates. The court then permitted the photograph to be admitted as an exhibit for the jury, ordering that the police markings be covered.

"A 'mug shot' is admissible if it is relevant and material and if its probative value outweighs its prejudicial tendency." *State* v. *Crowe,* 174 Conn. 129, 131, 384 A.2d 340. This "mug shot" had limited probative value in view of the agent's in-court identification of the defendant as the man who sold him drugs on the two dates alleged and his testimony that he had seen the defendant on two prior occa-

sions. Cf. *State* v. *Crowe,* supra; *State* v. *Woods,* 171 Conn. 610, 613, 370 A.2d 1080. Concealment of any police markings indicating a prior conviction, however, mitigated the prejudicial effect of the photograph. *State* v. *Woods,* supra. While we caution against the indiscriminate use of "mug shots" for identification; see, generally, annot., 30 A.L.R.3d 908; we find no abuse of the trial court's discretion here.[3]

The defendant further claims that the court erred in denying his motion to have stricken from the information the two aliases by which he was named. The information under which he was prosecuted named the defendant as "Willie J. Peary, alias Willie J. Peay, alias Willie Peay." During the course of the trial the defendant cross-examined several state's witnesses to determine whether they had ever known him under the name of "Peary." Each conceded that the defendant had only been known under the name "Peay," the state's main witness stating that the name "Peary" could well have come from the way in which he had written the defendant's name on the back of a photograph of him. Having ascertained this information, the defendant moved that the aliases be stricken, and that the information name him only under his proper name, Willie J. Peay. The defendant reasoned that use of the term "alias" was prejudicial, that the name "Peary" was erroneously supplied by the

[3] The further objection that the photograph was admitted under circumstances violating the hearsay rule will not be addressed because of the defendant's failure to raise this claim at trial. *State* v. *Evans,* 165 Conn. 61, 67, 327 A.2d 576. No review will be given to two other hearsay claims of the defendant that were not stated with sufficient particularity to apprise the trial court of the basis for the objections. *State* v. *Williams,* 169 Conn. 322, 332, 363 A.2d 72.

state, and that the presence or absence of a middle initial does not constitute an alias. The court denied the motion, noting that the aliases had nothing to do with the merits of the case.

At the time of the trial, Practice Book, 1963, § 501 provided that "[i]n an indictment, information or bill of particulars it is sufficient for the purpose of identifying the accused to state his true name *or to state the name, appellation or nickname by which he has been or is known.*"[4]   (Emphasis added.) This provision implies that use of an alias in an information is permissible only if the defendant has been or is known under the name designated. In the only previous case in which this court has addressed the issue now posed by the defendant, it was held that the trial court did not err in denying the defendant's motion to expunge from the indictment the alias of "The Cowboy," the court reasoning that "[t]he accused was known by this name and the State had the right to designate him by the alias under which he was known." *State* v. *Cianflone,* 98 Conn. 454, 460, 120 A. 347.

In the present case, the primary name by which the defendant was identified in the information— "Peary"—was neither his proper name nor properly an alias since there was no evidence that he had ever been known by that name. On this basis alone, the court erred in failing to delete the aliases from the information, and substituting the defendant's proper name.[5]

---

[4] This section was repealed as of October 1, 1976.

[5] It is noteworthy, too, that at the time of the trial a further section of the Practice Book provided that "[i]f in the course of the proceedings the true name of a person . . . informed against otherwise than by his true name is disclosed by the accused or in the pro-

The defendant, however, failed to interpose specifically this basis for his motion. Rather, he argued that use of the term "alias" was prejudicial to him. In *People* v. *Klukofsky,* 201 Misc. 457, 114 N.Y.S.2d 679, the court was similarly confronted with a defendant's motion to have the word "alias" stricken from an indictment on the ground that use of the term would be prejudicial to him in the event of a jury trial. The court agreed, noting, "[c]ertainly, the term has not been used with the intention of impairing in any way the rights of the defendant . . . . However, we would be less than realistic if we did not appreciate that over a period of time the term 'alias' has come to connote in the public mind some previous criminal activity. If that be true, the constant repetition of the word 'alias' might well produce a mental reaction unfavorable to a defendant which, if unexplained by him, could make the presumption [of innocence] of doubtful value." Id., 459–60.

While we are persuaded by the reasoning of this case—that use of the term "alias" may be prejudicial to a defendant tried by a jury—we are not of the opinion that such harm resulted from its use in this case. The names by which the defendant was identified in the information are, essentially, identical, the only difference deriving from the insertion of a middle initial in "Willie J. Peay" and the addition of an "r" in "Peary." Whatever predisposition may have existed in the minds of the jurors to give "alias" a meaning connoting

---

ceedings before the court, it shall order the true name of the accused to be inserted in the . . . information . . . and the proceedings shall be continued against him in his true name." Practice Book, 1963, § 503. (Repealed as of October 1, 1976.) Pursuant to this section, the court should have corrected the information.

hidden, covert, or criminal activity would fall before names so close that no identity could be hidden by them. The error was clearly clerical, as the main state's witness conceded. Under these circumstances, we cannot say that even if the court erred in denying the motion, such an error was harmful to the defendant. *State* v. *L'Heureux*, 166 Conn. 312, 323, 348 A.2d 578. By this disposition of the issue, we by no means condone the recitation of aliases in an information, in the absence of some evidence that the accused has, in fact, been known by the designated names.

The defendant next claims that the court erred in admitting into evidence two envelopes which had been used by the police to contain and identify the glassine bags containing the alleged heroin. Each envelope was marked with written notations made by the state's main witness, revealing the defendant's name and address, the date and time of the alleged sales, the amount paid, the name of the officer to whom the sales were made, and, finally, a comment that "envelope contains suspected heroin." The defendant did not object to the admissibility into evidence of the glassine bags, but, rather, he objected to the admissibility of the envelopes in view of the notations. The court admitted the envelopes as business entries, pursuant to General Statutes § 52-180, to which the defendant objected on the grounds that it was not the job of the testifying officer, who had participated in the sale and who made the notations, to keep the records of the capitol region crime squad.[6]

---

[6] On appeal, the defendant for the first time claims that the envelopes were inadmissible because they were altered by the writings and hence not valid as original exhibits and because the writing was improper, immaterial, and prejudicial to the defendant. As this

General Statutes § 52-180 provides, in part, that "[a]ny writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence or event, shall be admissible as evidence of such act, transaction, occurrence or event, if the trial judge finds that it was made in the regular course of any business, and that it was the regular course of such business to make such writing or record." The state's main witness testified that he had purchased the glassine bags from the defendant, that it was he who made the notations soon after the sale occurred, that it was his business as a member of the narcotics squad to make such notations on evidence, that it was the customary practice, and that when he made the notations he was acting in the normal course of his duties as an officer. This testimony was sufficient to establish that the requirements of § 52-180 were satisfied. See, e.g., *Bonner* v. *Winter,* 175 Conn. 41, 392 A.2d 436; *State* v. *Palozie,* 165 Conn. 288, 294, 334 A.2d 468. The defendant's assertion that it was not the job of the testifying officer who made the notations to keep the records is irrelevant to the question of whether the writings were admissible. The court did not err in overruling the defendant's objection.

The defendant claims error in that aspect of the court's charge to the jury commonly known as the "*Secondino* charge," by virtue of *Secondino* v. *New Haven Gas Co.,* 147 Conn. 672, 675, 165 A.2d 598. Both parties requested that the court charge the jury that an unfavorable inference could be drawn

court has often stated, a ground for objection not entertained at the trial is generally not subject to review by this court. *State* v. *Williams,* 169 Conn. 322, 332, 363 A.2d 72. No exceptional circumstances warrant suspension of this rule on this issue.

from the other party's failure to produce as a witness the informer who had, allegedly, participated in the sales. The court charged accordingly,[7] essentially adhering to the requirements delineated in the *Secondino* case. See also *Fontaine* v. *Coyle,* 174 Conn. 204, 206–207, 384 A.2d 616. The defendant excepted to the charge, stating that he agreed with the court "about both sides having found it necessary to draw unfavorable inferences, but I don't think the jury was impressed with the information that if they draw an unfavorable inference on . . . [the informer] being brought in, that it would not be necessary to draw any other unfavorable inferences because the state has to prove his guilt, and the defendant does not have to prove his innocence, because, if they follow that, they will follow that their job was done, because it would follow that . . . [the informer] would not back up . . . [the officer's] testimony."

On appeal, the defendant now claims that the court should have stressed that it would be natural for the state to produce this witness were his testimony to help the state's case and that the state had

---

[7] The relevant portion of the charge is as follows: "In this case, the accused claimed that an unfavorable inference should be drawn from the failure of the state to produce . . . [the informer] as a witness. Both the accused and the state claimed to have made efforts to bring . . . [the informer] to court, but these have been unsuccessful. It appears that both of them at one point or other did contact him some time ago, long prior to the trial. If you conclude that the absence of . . . [the informer] at the trial has not been satisfactorily explained and that he would have been available if a reasonable effort had been made to produce him, you may draw an inference that his testimony would not favor the state if in your judgment it would have been natural for the state to have produced him at this trial. Such an inference might also be drawn with regard to the failure to produce him for the defendant, if you feel it would be more natural for the defendant to have produced him at the trial."

not made reasonable efforts to locate him. The defendant further claims that the court erred in charging that an unfavorable inference could be drawn against him at all. A comparison of the defendant's stated exception made at trial with the objections briefed on this appeal reveals a noncompliance with the mandate of Practice Book, 1963, § 249, which requires that an exception to the charge "distinctly" state "the matter objected to and the ground of objection." The defendant's stated exception appears to concede that the court properly charged that an inference could be drawn against both parties. The remainder of the objection was insufficient adequately to apprise the court of the deficiency in the charge in a manner which would permit the court to make a correction. Error cannot be predicated on such ambiguous exceptions. *Prystash* v. *Best Medium Publishing Co.*, 157 Conn. 507, 512, 254 A.2d 872; *Worden* v. *Francis,* 148 Conn. 459, 461, 172 A.2d 196. To the extent that the defendant's claim may be of constitutional dimension, this court has previously addressed the issue of whether a charge permitting an unfavorable inference to be drawn against a criminal defendant for failure to produce a witness " 'stripped him of his presumption of innocence and shifted from the state its burden of proof' "; *State* v. *Annunziato,* 169 Conn. 517, 536, 363 A.2d 1011, rev'd on other grounds, *United States ex rel. Annunziato* v. *Manson,* 425 F. Sup. 1272 (D. Conn.), aff'd, 566 F.2d 410 (2d Cir.); determining that the claim was without merit. We find no error in that portion of the charge to the jury.

The defendant additionally challenges the court's charge on the role and responsibility of the jurors.[8] It is his contention that the charge "could be interpreted as urging the jurors to reach a quick verdict, and to give up their individual opinions in order that a decision be unanimous." Although the defendant did not specifically raise this objection at trial, we consider it because a fundamental right is involved and review may be made upon the record. *State* v. *Chesney,* 166 Conn. 630, 353 A.2d 783; *State* v. *Evans,* 165 Conn. 61, 327 A.2d 576.

"The possibility of disagreement by the jury is implicit in the requirement of a unanimous verdict and is part of the constitutional safeguard of trial by jury. See *United States* v. *Harris,* 391 F.2d 348, 355 (6th Cir.); *Thaggard* v. *United States,* 354 F.2d 735, 740 (5th Cir.) (Coleman, J., concurring specially); *Jenkins* v. *United States,* 330 F.2d 220, 222 (D.C. Cir.) (Wright, J., dissenting), rev'd, 380 U.S. 445, 85 S. Ct. 1059, 13 L. Ed. 2d 957; *Green* v. *United States,* 309 F.2d 852, 856 (5th Cir.). . . .

---

[8] The charge was as follows: "Now, the verdict of a jury in a criminal case must be a unanimous one with which all of you agree. Usually, there are some differences of opinion by jurors when they first retire. As reasonable people, they discuss these differences and try to reconcile them. If a jury cannot come to an agreement upon a verdict, the case usually must be tried again before a different jury. A second trial imposes a severe hardship upon the parties involved, the state and the accused. You must therefore make every reasonable effort to come to a verdict. You must listen to what other jurors say. You must not hesitate to reconsider your own opinion. If few of the other jurors do share your viewpoint, you should carefully examine its soundness. All of you have heard the same evidence and the same explanation of the law. As reasonable people, you should ultimately be able to come to some agreement upon a verdict. On the other hand, the verdict must be one with which each juror considers just in his own mind. A juror cannot desert his firm and honest convictions simply in order to reach an agreement which he regards as wrong."

While a defendant is not entitled to an instruction that a jury may 'hang'; *United States* v. *Sawyers,* 423 F.2d 1335, 1340 (4th Cir.); *United States* v. *Bowles,* 428 F.2d 592, 596 (2d Cir.), cert. denied, 400 U.S. 928, 91 S. Ct. 193, 27 L. Ed. 2d 188; he is entitled to a jury unfettered by an order to decide. *Jenkins* v. *United States,* 380 U.S. 445, 446, 85 S. Ct. 1059, 13 L. Ed. 2d 957." *State* v. *Ralls,* 167 Conn. 408, 421–22, 356 A.2d 147.

In the present case, the court's charge cannot be said to have either rushed or coerced the jurors. In its essence, the charge tracks that approved in *State* v. *Walters,* 145 Conn. 60, 63–64, 138 A.2d 786, cert. denied, 358 U.S. 46, 79 S. Ct. 70, 3 L. Ed. 2d 45, in which this court noted (p. 64) that "[t]he accuracy of the charge as a statement of the jurors' duty is not open to question. Its use has been approved by the Supreme Court of the United States. *Allen* v. *United States,* 164 U.S. 492, 501, 17 S. Ct. 154, 41 L. Ed. 528. . . . For practical reasons only, its use has customarily been deferred until after a disagreement has been reported. *State* v. *Schleifer,* 102 Conn. 708, 725, 130 A. 184." See also *Tough* v. *Ives,* 162 Conn. 274, 278–79, 294 A.2d 67. When read as a whole, the charge adequately apprised the jurors of their individual responsibility both to reconsider their opinions and to hold firm to honest convictions. We cannot say that the court's charge, when read as a whole, was prejudicial to the defendant.

Finally, the defendant claims that the court erred in accepting a verdict which was contrary to the evidence and the law. We conclude that there was ample evidence from which the jury could reasonably and logically conclude that the defendant was

guilty beyond a reasonable doubt as charged, and that the court did not err, as a matter of law, in accepting the jury's verdict. See, e.g., *State* v. *Ralls,* supra, 415; *State* v. *Cobbs,* 164 Conn. 402, 424, 324 A.2d 234.

There is no error.

In this opinion the other judges concurred.