**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Dan ANDERSON, Defendant-Appellant.**

**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Tosun Ates YORUK, Defendant-Appellant.**

**Nos. 77–5303, 77–5304.**

United States Court of Appeals, Sixth Circuit.

Argued June 21, 1978.

Decided Oct. 19, 1978.

---

Richard D. Heideman, Bob H. Zeman, Louisville, Ky., for defendant-appellant in No. 77–5303.

John T. Carneal, Paducah, Ky. (Court-appointed), for defendant-appellant in No. 77–5304.

Albert Jones, U. S. Atty., James H. Barr, Louisville, Ky., for plaintiff-appellee.

Before PHILLIPS, Chief Judge, and CECIL and PECK, Senior Circuit Judges.

PECK, Senior Circuit Judge.

Appellants Tosun Yoruk and Dan Anderson were jointly tried and found guilty by a jury of participating in a conspiracy to transport marijuana from Florida to Kentucky. They were both sentenced to three years in prison, and have appealed their convictions.

On October 8, 1976, Karl Scarborough and William Boyden were arrested in Ocala, Florida, and charged with possession of marijuana and other drugs. The two gave statements to the Florida police, admitting that they were in Florida to obtain marijuana. They claimed that a Dr. James Ammons, of Murray, Kentucky, had talked them into making the trip, during a visit to Dr. Ammons' home. They said that Anderson and Yoruk were also present at the time, and that Anderson had shown them how to use a marijuana "test kit."

Dr. Ammons was arrested and charged with a variety of drug-related offenses, in-

cluding possession and distribution of controlled substances, writing illegal prescriptions, and conspiracy to import marijuana into Kentucky. He was tried separately from Yoruk and Anderson, who were charged only with conspiracy.

Before trial, Yoruk and Anderson both agreed to plead guilty, in return for a Government recommendation of a two-year suspended sentence for Anderson, and a one-year sentence, with all but sixty days suspended, for Yoruk. The district court refused to accept the plea, however, and the two were tried together before a jury.

Yoruk's principal argument on appeal is that irrelevant, highly prejudicial evidence was introduced against him, requiring a new trial. The Government called an expert witness, Dr. Green, and he was permitted to testify at length about the "evils" of marijuana, the effects of its abuse on users, and about the characteristics of a variety of other controlled substances. Yoruk argues that this highly prejudicial testimony was wholly irrelevant to the question of whether or not he had participated in a conspiracy. He points out that the question of whether marijuana use is bad, morally or physically, was not an issue in this case, since he did not dispute that it is illegal, and no attempt was made to raise a defense that even if the conspiracy was proved, he should not be punished because marijuana is harmless. Indeed, if he had done so, the Government could have properly objected on grounds of irrelevancy.

■ Dr. Green's testimony was extensive, covering the use and effects of marijuana, cocaine, and the prescription drugs Cylert and Dilaudid. He testified, with frequent references to the "drug scene" and the "street scene," that marijuana use can result in a person "going berserk or amuck or . . . paranoid," by releasing inhibitions. According to Dr. Green, there may be "severe emotional disturbances, panic, anxiety, depression, paranoia, psychosis, hallucinations and disturbances." Furthermore, marijuana users show "a marked decrease in their motivation, in their personal hygiene. They tend to be sleepy, apathetic, lethargic, disinterested in what's going on around them, their social relationships frequently deteriorate rapidly. If they're married, their marital relationships generally deteriorate. . . . [A student's] grades drop off. His personal hygiene drops off. He sleeps, doesn't care. He is generally irritable, lethargic and indifferent."

The question of the admissibility of this highly prejudicial sort of testimony in a drug conspiracy case has been recently settled in this Circuit by the decision in *United States v. Green*, 548 F.2d 1261 (6th Cir. 1977), a case which is indistinguishable from this case. In *Green*, the defendants were charged with conspiracy to manufacture DMT, a controlled hallucinogenic drug. After testifying that the various chemicals found at the defendants' home could only be used to manufacture DMT, the Government's expert witness was permitted to continue on to describe the threat posed by the drug, its bizarre physiological effects upon the body, the procedure through which a drug is classified as a controlled substance, the relationship of DMT to more common abused substances such as LSD, and the "street value" of the drug. This Court, speaking through Judge Celebrezze, held that the trial court "clearly abused its discretion by allowing the Government to introduce extensive expert testimony of both dubious relevance and cumulative prejudicial impact." *Id.* at 1268. We agree with the panel in *Green* that testimony of this kind in a conspiracy case can only "engender vindictive passions within the jury or confuse the issues." The effects of a drug, no matter how alarming, are wholly irrelevant to the only issue in this case, which is whether Yoruk and Anderson participated in a conspiracy to import marijuana.*

---

* The recent decision by this Court in *United States v. Kirk*, 584 F.2d 773, (6th Cir., 1978), upheld the conviction of a doctor charged with conspiracy to supply written orders purporting to be prescriptions to others, enabling them to obtain controlled substances for personal use

■ The Government argues that the testimony, not only concerning marijuana, but also dealing with the effects of the other drugs and the propriety of Dr. Ammons' prescription-writing, was relevant to "lend credibility" to the disjointed and contradictory testimony given by Scarborough and Boyden, and to impeach the testimony of the Government's own witness, Dr. Ammons. To the extent that Dr. Ammons' testimony wandered into the irrelevant areas of the effects of certain drugs used by himself and his family, the Government's proper course should have been to ask for a limiting instruction from the trial judge, not to use its own witness's testimony as an excuse to present improper and highly prejudicial evidence to the jury. In any event, to the extent that the expert testimony was arguably relevant, the Government ignores what is perhaps the most important test of admissibility in a criminal case, whether the potential for unfair prejudice and confusion of the issues outweighs the probative value of the evidence. *Green, supra,* at 1268. The aura of special reliability and trustworthiness surrounding expert testimony makes this balancing test even more important to ensure a fair trial. On a review of the record, we conclude that the portions of Dr. Green's testimony challenged by appellant were either wholly irrelevant to the issues presented by this case, or so inordinately prejudicial as to outweigh any possible probative value.

■ Appellant Dan Anderson has argued that the district court abused its discretion in refusing to accept his guilty plea, forcing him to go to trial and ultimately resulting in a substantially more severe sentence than had been negotiated with the Government. The district judge rejected the plea after a long, confusing exchange with the defendant and his counsel. The ultimate problem at the hearing was that while Anderson was clearly competent, fully aware of the charges against him, and acting in his own best interest by pleading guilty, he insisted that he didn't "feel guilty," claiming that he did not have the criminal intent required by the conspiracy charge. He did, however, freely admit to the overt acts charged by the Government, which were more than sufficient to enable a jury to properly infer guilty intent. While we decline to find that the district court abused its discretion in rejecting the plea, and in fact admire the patience of the judge as reflected in the record, we note that we see no barrier to acceptance of the plea under the circumstances of this case. So long as a plea is knowing, voluntary and supported by an adequate factual basis, it is not required that the trial judge obtain an unequivocal confession of guilty intent before a plea may be accepted. Guilty pleas serve a variety of worthwhile, legitimate goals, and are to be encouraged. Delay in the imposition of an appropriate sanction is avoided, and the time and expense of a trial is limited to deciding real disputes, helping to preserve the meaning of our presumption of innocence. Acceptance of the plea offered by Anderson would have been proper, in spite of his equivocation concerning his state of mind. See, for example, *North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970), in which the Supreme Court held that a guilty plea should be accepted in a murder case where there is strong evidence of guilt, even though the defendant claimed he had not committed the murder, when the defendant's alternative was a jury trial with a risk of the death penalty. Anderson's other contentions on

and further distribution. Evidence concerning the manner in which these drugs were used and the effects they produce was introduced at trial. We need not reach the question of admissibility which was involved in that case, because Dr. Kirk had raised the defense that his prescriptions were issued for a lawful, medical purpose, primarily weight control. The evidence objected to tended to show that

the drugs involved were subject to abuse if their use was not carefully supervised, and that prescriptions for drugs in the quantities involved could not have been legitimately intended for a medical purpose. The court held that in view of "all of the issues in this case . . . this evidence was relevant." P. ——. No such defense was raised in the present case.

appeal do not require discussion, as they are without substantial merit.

■ Anderson did not raise the evidentiary issue urged by his codefendant Yoruk in his brief or otherwise prior to oral argument, when Anderson's counsel attempted to adopt the argument made by Yoruk's counsel. While it is extremely rare for this Court to consider issues not properly raised and argued before it, we conclude that under the unique circumstances of this case it would be a manifest injustice to allow Anderson's conviction to stand while ordering a new trial for Yoruk. Fed.R.App.P. 2. Therefore, both convictions are reversed and remanded to the district court for further proceedings consistent with this opinion.