### STATE OF CONNECTICUT *v.* ROBERT L. WILLIS
### (14316)

SHEA, CALLAHAN, GLASS, BORDEN and BERDON, Js.

Argued December 4, 1991—decision released April 7, 1992

*Joseph G. Bruckmann,* assistant public defender, with whom, on the brief, was *Arnaldo E. Granados,* assistant public defender, for the appellant (defendant).

*Richard F. Jacobson,* assistant state's attorney, with whom, on the brief, were *Donald A. Browne,* state's attorney, and *C. Robert Satti, Jr.,* assistant state's attorney, for the appellee (state).

CALLAHAN, J. The defendant, Robert L. Willis, was charged in an information with two counts of the crime of possession of cocaine with intent to sell in violation of General Statutes § 21a-278 (b)[1] and one count of the crime of possession of marihuana in violation of General Statutes § 21a-279 (c).[2]

The charges arose out of an incident that occurred on January 9, 1989, at approximately 10:55 p.m. in Stratford. The Stratford police, while investigating a stolen marker plate, discovered ninety-four vials of crack cocaine in an automobile occupied by the defendant and two other young men. Subsequently, the

[1] General Statutes § 21a-278 (formerly § 19-480a) provides in pertinent part: "PENALTY FOR ILLEGAL MANUFACTURE, DISTRIBUTION, SALE, PRESCRIPTION OR ADMINISTRATION BY NON-DRUG-DEPENDENT PERSON. . . . (b) Any person who manufactures, distributes, sells, prescribes, dispenses, compounds, transports with the intent to sell or dispense, possesses with the intent to sell or dispense, offers, gives or administers to another person any narcotic substance, hallucinogenic substance other than marihuana, amphetamine-type substance, or one kilogram or more of a cannabis-type substance except as authorized in this chapter, and who is not at the time of such action a drug-dependent person, for a first offense shall be imprisoned not less than five years nor more than twenty years; and for each subsequent offense shall be imprisoned not less than ten years nor more than twenty-five years. The execution of the mandatory minimum sentence imposed by the provisions of this subsection shall not be suspended except the court may suspend the execution of such mandatory minimum sentence if at the time of the commission of the offense (1) such person was under the age of eighteen years or, (2) such person's mental capacity was significantly impaired but not so impaired as to constitute a defense to prosecution."

[2] General Statutes § 21a-279 (formerly § 19-481) provides in pertinent part: "PENALTY FOR ILLEGAL POSSESSION. SUBSTITUTION OF MEDICAL TREATMENT FOR CRIMINAL SANCTIONS. . . .

"(c) Any person who possesses or has under his control any quantity of any controlled substance other than a narcotic substance, or a hallucinogenic substance other than marihuana or who possesses or has under his control less than four ounces of a cannabis-type substance, except as authorized in this chapter, for a first offense, may be fined not more than one thousand dollars or be imprisoned not more than one year, or be both fined and imprisoned; and for a subsequent offense, may be fined not more than three thousand dollars or be imprisoned not more than five years, or be both fined and imprisoned."

defendant was brought to the Stratford police headquarters; there, another ninety-four vials of crack cocaine and two small baggies containing marihuana were found in a trash receptacle in an interrogation room that had been occupied by the defendant.

A jury acquitted the defendant of the charge contained in the first count of the information, which concerned the cocaine found in the automobile. The defendant, however, was convicted by the jury of the charges in the second and third counts of the information, which related to the ninety-four vials of crack cocaine and the marihuana found in the trash receptacle. The trial court imposed a sentence of thirteen years for the defendant's conviction of possession of cocaine with intent to sell and a consecutive sentence of one year for his conviction of possession of marihuana, for a total effective sentence of fourteen years imprisonment.

The defendant appealed his convictions to the Appellate Court. The Appellate Court affirmed the judgment of the trial court. *State* v. *Willis*, 24 Conn. App. 678, 591 A.2d 445 (1991). We granted certification limited to the following questions: "1. Did the Appellate Court correctly conclude that the trial court properly admitted the state's evidence regarding the physical effects of crack cocaine? 2. If the answer to the first question is no, did the trial court properly deny the defendant's motion for a mistrial? 3. If the answer to the first question is no, did the trial court properly deny the defendant's motion to strike the testimony regarding the physical effects of crack cocaine?" *State* v. *Willis*, 220 Conn. 907, 597 A.2d 339 (1991).

These questions arise because, in the course of the defendant's trial, on direct examination, Charles Reading, the supervising toxicologist at the state toxicology laboratory, when asked by the prosecutor to

describe "the physiological effects of cocaine free base, non-salt form upon the human body," testified: "Cocaine, particularly in the free base form, is readily absorbed across the mucous membranes of the body; that means through the lining of the mouth or the nose or through the mucosa of the lungs. In this form, it travels very rapidly into the blood stream and therefore carried very rapidly to the rest of the body. This is the reason that cocaine when ingested in this manner results in a very intense physiological reaction. One of those reactions is a stimulation of the pleasure centers of the central nervous system. Another reaction, which is particularly a problem, is the irritation of the myocardium, that is the actual tissue of the heart itself which has been recorded in many cases to cause almost instantaneous death."

Immediately after Reading mentioned "instantaneous death," the defendant objected to all of Reading's testimony relating to the physiological effects of crack cocaine. He then asked that the testimony be stricken because it was irrelevant to the crime of possession of cocaine with intent to sell, with which he was charged, and also because its prejudicial effect outweighed its probative value. The state, when asked by the trial court to articulate its claim for the admissibility of Reading's testimony, replied that "it [was] relevant to the issue of the intent to sell." The trial court agreed with the state and overruled the defendant's objection and his request that the testimony be stricken. The defendant took an exception to the trial court's rulings.

Later, following the luncheon recess, the defendant moved for a mistrial arguing that Reading's testimony was "so prejudicial and so inflammatory" that it denied him a fair and impartial trial. The trial court denied the defendant's motion, asserting that it was of the opinion that the testimony concerning the physiological effects of cocaine on an individual had probativ'

value relating to the defendant's intent to sell. It also ruled that the probative value of the testimony outweighed any prejudice that it might engender. The Appellate Court agreed with the trial court's ruling and affirmed its judgment. *State* v. *Willis,* supra, 24 Conn. App. 683–84.

" 'Evidence is admissible when it tends to establish a fact in issue or to corroborate other direct evidence in the case. One fact is relevant to another fact whenever, according to the common course of events, the existence of the one, taken alone or in connection with other facts, renders the existence of the other either certain or more probable. Unless excluded by some rule or principle of law, any fact may be proved which logically tends to aid the trier in the determination of the issue. Evidence is admitted, not because it is shown to be competent, but because it is not shown to be incompetent. No precise and universal test of relevancy is furnished by the law, and the question must be determined in each case according to the teachings of reason and judicial experience.' (Citations omitted.) *State* v. *Schaffer,* 168 Conn. 309, 317, 362 A.2d 893 (1975), quoting *Federated Department Stores, Inc.* v. *Board of Tax Review,* 162 Conn. 77, 82, 291 A.2d 715 (1971)." *State* v. *Sharpe,* 195 Conn. 651, 659, 491 A.2d 345 (1985); *State* v. *Holliman,* 214 Conn. 38, 50, 570 A.2d 680 (1990). "The trial court is given broad discretion in determining the relevancy of evidence and its decision will not be disturbed absent a clear abuse of that discretion." *State* v. *Holliman,* supra, 50; *State* v. *Parker,* 197 Conn. 595, 601, 500 A.2d 551 (1985). The trial court also has broad discretion in balancing the probative value of proffered evidence against its prejudicial effect. That discretion is subject to reversal only where an abuse of discretion is manifest or where an injustice appears to have been done. *State* v. *DeJesus,* 194 Conn. 376, 382, 481 A.2d 1277 (1984); *State* v. *Tucker,* 181 Conn. 406, 416, 435 A.2d 986 (1980).

We conclude that the trial court acted within its broad discretion when it admitted Reading's testimony wherein he described how free base cocaine rapidly reached the blood stream through the mucous membranes of the body and resulted in "a very intense physiological reaction" and "a stimulation of the pleasure centers of the central nervous system." That particular testimony of Reading was arguably relevant to prove that the ingestion of free base cocaine results in a quick, pleasurable "high" that might make it a desirable commodity, sought after by that segment of the community that utilizes illicit drugs. Proof of such, in turn, could result in a finding by the jury that the defendant possessed a large quantity of a readily saleable substance. That finding might aid the jury in drawing a reasonable inference that the cocaine the state alleged the defendant possessed was not for his personal use, but for sale to others. *State* v. *Vilalastra,* 207 Conn. 35, 42, 540 A.2d 42 (1988); *State* v. *Avila,* 166 Conn. 569, 576–77, 353 A.2d 776 (1974). Because Reading's testimony in this regard possessed probative value and did not have an unduly prejudicial impact, the trial court did not abuse its discretion by denying the defendant's motion that it be stricken.[3]

Reading's testimony, however, wherein he stated, "[a]nother reaction, which is particularly a problem, is the irritation of the myocardium, that is the actual tissue of the heart itself, which has been recorded in many cases to cause almost instantaneous death," is a different matter altogether. We fail to see how that portion of Reading's testimony had any probative value relating to the crimes with which the defendant was

[3] We note that the defendant did not object to Reading's testimony until after he had mentioned "instantaneous death." Reading's testimony concerning the "very intense physiological reaction" and "stimulation of the pleasure centers of the central nervous system" resulting from cocaine ingestion had been given prior thereto.

charged. Because its probative value was nil, and its possible prejudicial effect evident, that portion of Reading's testimony should have been stricken by the trial court. That does not necessarily mean, however, that the trial court improperly denied the defendant's motion for a mistrial or that the Appellate Court's decision affirming the trial court's judgment need be reversed.

" 'The general principle is that a mistrial should be granted only as a result of some occurrence upon the trial of such a character that it is apparent to the court that because of it a party cannot have a fair trial; *State* v. *Peary,* 176 Conn. 170, 172–73, 405 A.2d 626 (1978); *State* v. *Ruiz,* 171 Conn. 264, 368 A.2d 222 (1976); *State* v. *Brown,* 169 Conn. 692, 703, 364 A.2d 186 (1975); *State* v. *Rose,* 168 Conn. 623, 635, 362 A.2d 813 (1975)'; *State* v. *Turcio,* 178 Conn. 116, 143, 422 A.2d 749 (1979); 'and the whole proceedings are vitiated.' *State* v. *Peary,* [supra, 173]; see *State* v. *Hafner,* 168 Conn. 230, 245–46, 362 A.2d 925 (1975)." *State* v. *Brigandi,* 186 Conn. 521, 543, 442 A.2d 927 (1982).

In this instance we determine that, although that portion of Reading's testimony wherein he mentioned "instantaneous death" was not probative of the defendant's guilt and had a tendency to prejudice the defendant, any resulting prejudice did not deprive him of an impartial jury and a fair trial. It was not required, therefore, that a mistrial be declared and that the proceedings be vitiated. See id.

During the entire trial the only mention of "instantaneous death" occurred on the single occasion noted.[4] It was not dwelt upon or magnified by the state and the state did not use the term in its final arguments.

---

[4] Reading testified on January 3, 1990, the second day of the trial. The trial did not conclude until January 16, 1990, when the jury delivered its verdict.

See *State* v. *Negron,* 221 Conn. 315, 330, 603 A.2d 1138 (1992). Also, the effect of Reading's comment was, to an extent, ameliorated by his subsequent testimony that made reference to the beneficial uses of cocaine as an anesthetic. See *Lane* v. *Commonwealth,* 223 Va. 713, 718, 292 S.E.2d 358 (1982).

Moreover, it does not seem possible that it would come as a surprise to any juror in 1990, when the defendant was tried, that illicit drugs have harmful physiological effects and that their use may, on occasion, result in death.[5] Therefore, to have been told that the use of crack cocaine could result in "instantaneous death" could hardly have so shocked and inflamed the jurors that they would jettison their objectivity and impartiality in deciding whether it was the defendant who was in possession of the cocaine in question. That emotion did not rule the jury's reason is evidenced by the fact that it acquitted the defendant of the first count of possession of cocaine with intent to sell charged in the information.

The defendant does not claim that the trial court's failure to strike Reading's testimony was of constitutional significance. "When a trial error in a criminal case does not involve a constitutional violation the burden is on the defendant to demonstrate the harmfulness of the court's error. . . . The defendant must show that it is more probable than not that the erroneous action of the court affected the result." (Citations omitted.) *State* v. *Artieri,* 206 Conn. 81, 88, 536

---

[5] In his closing argument, defense counsel stated: "I am convinced and the Court can take judicial notice of the fact that in our country, the most important, the most difficult, the most impacting domestic problem, social problem, personal problem, community problem that we have is the problem of drugs. It is going to the roots, to the foundation of our society because it's attacking our young people. . . . Most of us may not have been touched so close or so personally by the problem of drugs, but we see it every day on TV, we see it every day in the newspaper, on special programs, on radio programs."

A.2d 567 (1988). The defendant was entitled to a fair trial, not a perfect one. *Ross* v. *Oklahoma,* 487 U.S. 81, 91, 108 S. Ct. 2273, 101 L. Ed. 2d 80, reh. denied, 487 U.S. 1250, 109 S. Ct. 11, 101 L. Ed. 2d 962 (1988); *State* v. *Kurvin,* 186 Conn. 555, 565, 442 A.2d 1327 (1982). We conclude that the result was not affected and that he received a fair trial despite the admission into evidence of a solitary sentence containing prejudicial testimony by the toxicologist.

The judgment of the Appellate Court is affirmed.

In this opinion GLASS and BORDEN, Js., concurred.

SHEA, J., concurring. Although I agree with the result, I believe that all the testimony concerning the physiological effects of cocaine should have been excluded from evidence, not just the portion concerning the risk of "instantaneous death." The practical effect of this evidence is to emphasize the seriousness of the crime, i.e., that cocaine causes a "very intense physiological reaction," in the hope that jurors will be more likely to convict in order to do something about the drug problem. Such evidence does have an emotional impact favorable to the prosecution regardless of its relevance to the issues. Our approval of such testimony as relevant is likely to result in the use of similar testimony in other drug cases, because prosecutors believe it helps them to obtain convictions.

The majority opinion finds the evidence of the physiological effects of cocaine relevant to prove the intention of the defendant to sell the cocaine in his possession because it demonstrates that cocaine creates a pleasurable sensation and thus is a "desirable commodity" sought by drug users. That there is a market for cocaine is so widely known that it would have been a subject for judicial notice, if the prosecutor had sought only to establish that fact. It is inconceivable that any juror

in these times would be unaware of the marketability of cocaine, despite the risk of punishment for its use.

If the minimal relevance of this evidence is balanced against its potential for prejudice, the trial court, in my view, could not reasonably have concluded that the former outweighed the latter. Other courts have reached the same conclusion with respect to the relevance of testimony concerning the physiological effects of illegal drugs in prosecutions involving their sale or possession. *United States* v. *Anderson,* 584 F.2d 849, 852 (6th Cir. 1978) ("The effects of a drug, no matter how alarming, are wholly irrelevant to the only issue in this case, which is whether [the defendants] participated in a conspiracy to import marijuana."); *United States* v. *Greene,* 548 F.2d 1261, 1270 (6th Cir. 1977) ("Such facts may be highly relevant in assessing the need for controlling the drug, but at trial they did not tend to prove a conspiracy charge. They could only serve to prejudice the jury."); *Smith* v. *Commonwealth,* 223 Va. 721, 724, 292 S.E.2d 362 (1982) ("To permit evidence respecting extreme horrors which may result from the use of illegal substances diverts the jury from its principal inquiry and injects an element of passion into the trial prejudicial to the accused.").

I agree, nevertheless, with the ultimate conclusion of the majority that the physiological evidence, even with the inclusion of the "instantaneous death" portion, was not so prejudicial as to indicate that the outcome of the trial would probably have been different if this evidence had been excluded.

BERDON, J., dissenting. I concur with Justice Shea that it was improper for the trial court to admit into evidence *all* the testimony regarding the physiological effects of cocaine for the reasons stated in his concurring opinion. Nevertheless, I dissent from the result

because I believe that this testimony was prejudicial and, therefore, deprived the defendant of a fair trial.

Although the majority concedes that the trial court improperly admitted into evidence the "possibl[y] prejudicial" expert testimony that cocaine use can cause "instantaneous death," somehow it concludes that this was harmless. We have long held that " 'improper evidence that may have a tendency to excite the passions, awaken the sympathy, or influence the judgment of the jury, cannot be considered as harmless.' " *State* v. *Loughlin,* 149 Conn. 21, 26, 175 A.2d 367 (1961), quoting *St. Martin* v. *New York, N.H. & H. R. Co.,* 89 Conn. 405, 411, 94 A. 279 (1915).

In the present case, Charles Reading, supervisor for the state of Connecticut toxicology laboratory, testified that cocaine absorbed through the body's mucous membranes "results in a very intense physiological reaction. One of those reactions is a stimulation of the pleasure centers of the central nervous system. Another reaction, which is particularly a problem, is the irritation of the myocardium, that is the actual tissue of the heart itself, which has been recorded in many cases to cause almost instantaneous death."[1] Unlike the situation in *Lane* v. *Commonwealth,* 223 Va. 713, 292 S.E.2d 358 (1982), where the Supreme Court of Virginia concluded that the erroneously admitted testimony regarding a drug's ill effects did not warrant reversal, Reading did not limit his improper remarks

[1] Clearly, Reading's testimony had an impact upon the jury. Reading, whose expertise as the supervising toxicologist for the state's toxicology laboratory added credence to his testimony, predicated his testimony on his education, i.e., a bachelor's degree in chemistry from the University of Utah and a doctoral degree in forensic toxicology from the University of Maryland, his membership in the American Board of Forensic Toxicologists as a diplomat and past vice-president, and his twenty years of experience as a toxicologist.

to instances of *excessive use.*[2] Rather, as the defendant aptly notes, Reading's testimony portrayed *any* use of cocaine as a form of "Russian roulette," thereby inflaming the passions of the jury by implanting in their minds the notion that the defendant was peddling death for profit.

In similar circumstances, other jurisdictions have found that evidence of a drug's physiological effect prejudices the defendant to the extent that fairness requires a new trial. *United States* v. *Anderson,* 584 F.2d 849, 852 (6th Cir. 1978); *Smith* v. *Commonwealth,* 223 Va. 721, 724–25, 292 S.E.2d 362 (1982).

Furthermore, the majority presumably relies upon the following from *State* v. *Brigandi,* 186 Conn. 521, 543, 442 A.2d 927 (1982), with which I have no quarrel: " 'The general principle is that a mistrial should be granted only as a result of some occurrence upon the trial of such a character that it is apparent to the court that because of it a party cannot have a fair trial . . . and the whole proceedings are vitiated.' " (Citations omitted.) In the present case, however, the majority fails to offer any analysis explaining how it came to the conclusion that, even though the "instantaneous death" testimony had no probative value and had a tendency to prejudice the defendant, he was not deprived of a fair trial.

Moreover, the majority fails to set forth the standard of review it applied. Based on the particular circumstances in *Brigandi,* this court stated that trial courts

---

[2] The Supreme Court of Virginia in *Lane* v. *Commonwealth,* 223 Va. 713, 717–18, 292 S.E.2d 358 (1982), concluded that "[u]nlike the testimony we considered in *Smith* [v. *Commonwealth,* 223 Va. 721, 292 S.E.2d 362 (1982)], McGarry's [testimony] was not such as would excite the passions of the jury. While he testified that excessive use of the drug is dangerous, he was careful to state its normal effect is that produced by a sleeping pill. We view this testimony as being innocuous, and while it was erroneously admitted, it does not justify a reversal of Lane's conviction."

have "wide discretion in passing on motions for mistrial." Id. The abuse of discretion standard, however, would be inappropriate in the present case because the trial court's denial of the motion for mistrial was predicated on its erroneous ruling that the testimony had probative value and was, therefore, admissible. Had the trial court correctly ruled that the testimony about "instantaneous death" was irrelevant and had it stricken from the evidence, then the trial court's decision to deny the motion for a mistrial would be entitled to an abuse of discretion standard of review. Obviously, this deferential standard should not be used when an erroneous evidentiary ruling provided the basis for the trial court's decision on the mistrial motion.

I would find that admission of all such testimony pertaining to the physiological effects of the drug to be prejudicial. Accordingly, I would set aside the conviction and remand for a new trial. I, therefore, respectfully dissent.

