STATE OF CONNECTICUT v. REYNALDO CRUZ
(13452)

O'Connell, Landau and Heiman, Js.

---

Argued October 25, 1995—decision released March 5, 1996

*Neal Cone*, assistant public defender, for the appellant (defendant).

*Mary H. Lesser*, assistant state's attorney, with whom, on the brief, was *Patricia A. Swords*, state's attorney, for the appellee (state).

LANDAU, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of criminal attempt to commit assault in the first degree in violation of General Statutes §§ 53a-49 (a) (2) and 53a-59 (a) (1), conspiracy to commit assault in the first degree in violation of General Statutes §§ 53a-48 (a)[1]

[1] General Statutes § 53a-48 (a) provides: "A person is guilty of conspiracy when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such

and 53a-59 (a) (1),[2] reckless endangerment in the first degree in violation of General Statutes § 53a-63 (a), carrying a pistol without a permit in violation of General Statutes § 29-35 (a), threatening in violation of General Statutes § 53a-62 (a) (1), and unlawful discharge of a firearm in violation of General Statutes § 53-203.

In a wholesale attack on the trial court's conclusions of law and instructions to the jury, the defendant claims that the trial court (1) should have granted his motion for judgment of acquittal of conspiracy to commit assault in the first degree asserting there was insufficient evidence for conviction, (2) should have granted his motion for a new trial pursuant to Practice Book § 902[3] asserting that the verdicts were against the weight of the evidence, (3) should have granted his motions for a mistrial and a new trial asserting that he was deprived of a fair trial because a state's witness had referred to him as a drug dealer, (4) inadvertently gave an improper missing witness charge, (5) should have instructed the jury, sua sponte, that it could not infer that the defendant was a criminal from evidence that the police possessed his photograph, (6) appeared partisan in its charge, and thus undermined the presumption of innocence and the state's burden of proof, and (7) unduly emphasized the defendant's interest in the outcome of the case when charging on the credibility of witnesses. Finally, the defendant asserts that even if no one error on its own warrants a reversal, their combined effect does.

conduct, and any one of them commits an overt act in pursuance of such conspiracy."

[2] General Statutes § 53a-59 provides in pertinent part: "(a) A person is guilty of assault in the first degree when: (1) With intent to cause serious physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument . . . ."

[3] Practice Book § 902 provides in pertinent part: "Upon motion of the defendant, the judicial authority may grant him a new trial if it is required in the interest of justice. . . ."

The jury could reasonably have found the following facts. There was a feud between a group of Hispanic males and three African-Americans, one of whom was the victim, Jeffrey Wright. On April 23, 1993, while Wright was visiting his girlfriend at her Village Street home in Vernon, the defendant and Raphael Baez, known as "Sino," and several other Hispanic men, threw stones at Wright as he attempted to exit the house. The group also shouted threats at Wright and urged him to come outside and fight. From inside the house, Wright telephoned Nathaniel Evans and informed him about the situation. In response to Wright's phone call, Evans and Lance Davis escorted Wright from the house on Village Street to Evans' house on Union Street.

A short time later, an individual known as "Tito" arrived at Evans' house and stated that Sino wanted to fight with Wright. Thereafter, Evans and Davis returned to Village Street to intervene on Wright's behalf. On Village Street, Evans observed the defendant, known to him as Ray, standing together with Sino, Tito, and a fourth Hispanic individual described only as an "older" male. Evans asked Sino whether they could resolve the problem by talking instead of fighting to which Sino replied: "There's no more talking, there's shooting now." Realizing that a compromise was not possible, Evans and Davis returned to Evans' house followed by the defendant and the others.

Evans, Davis and Wright stood on Evans' front porch as the defendant and his group assembled in a parking lot across the street. Sino crossed the street and began shouting at Wright to come and fight. As Wright began to leave the porch to confront Sino, the older male handed something to the defendant. Seconds later, the defendant raised his arm, pointed a handgun in the direction of Evans, Davis and Wright and fired one shot. The three men crawled into the house and called the police. The defendant and his group left the area.

At the scene of the shooting, the police recovered one shell casing from an expended .25 caliber cartridge and one .25 caliber cartridge that had not been fired. In a search of Sino's bedroom, the police recovered two additional .25 caliber cartridges with markings similar to the markings on the cartridges found at the scene. Several weeks later, the defendant met Evans on the street and apologized for the shooting incident. The defendant informed Evans that he was not angry with Evans personally, and that the attack was directed only at Wright.

It is against this factual backdrop that we measure the defendant's claim that there was insufficient evidence on which to sustain a conviction of conspiracy to commit assault in the first degree.

I

The defendant first claims that the trial court should have granted his motion for judgment of acquittal directed to the count of conspiracy to commit assault in the first degree. He argues that even if it were found that he had fired the gun, the evidence was insufficient to show that he was acting in concert with the other members of his group. We disagree.

We employ a two part analysis when reviewing sufficiency of the evidence claims. First, we construe the evidence in a light most favorable to sustaining the verdict. Next, we determine whether, from the evidence and all the reasonable inferences which it engenders, a jury could rationally have concluded that the defendant was guilty beyond a reasonable doubt. *State* v. *Laws*, 37 Conn. App. 276, 281, 655 A.2d 1131, cert. denied, 234 Conn. 907, 659 A.2d 1210 (1995). In this process of review, the probative force of the evidence is not diminished by the fact that the evidence may be circumstantial rather than direct. Id. To uphold the conviction, there can be no reasonable doubt as to any essential

element of the offense charged. *State* v. *Smith*, 138 Conn. 196, 201, 82 A.2d 816 (1951).

"To establish the crime of conspiracy under § 53a-48 . . . the state must show that there was an agreement between two or more persons to engage in conduct constituting a crime and that the agreement was followed by an overt act in furtherance of the conspiracy by any one of the conspirators. . . . The existence of a formal agreement between the parties need not be proved; it is sufficient to show that they are knowingly engaged in a mutual plan to do a forbidden act. . . . Because of the secret nature of conspiracies, a conviction is usually based on circumstantial evidence. . . . Moreover, it is well settled that conspiracy is a specific intent crime, with the intent divided into two parts: (1) the intent to agree to conspire; and (2) the intent to commit the offense that is the object of the conspiracy. . . . To sustain a conviction for conspiracy to commit a particular offense, the prosecution must show not only that the conspirators intended to agree but also they intended to commit the elements of the offense." (Citations omitted; internal quotation marks omitted.) *State* v. *Estrada*, 28 Conn. App. 416, 420–21, 612 A.2d 110, cert. denied, 223 Conn. 925, 614 A.2d 828 (1992).

At trial, the state relied on certain evidence to establish the defendant's role in the conspiracy. The underpinning of this evidentiary framework was the fact that the defendant was a member of a group of individuals acting in concert in the events that preceded the shooting. The evidence established that the defendant participated in the stone throwing incident, and that he was present when Sino told Evans there would be shooting rather than talking, and when Sino and the others followed Evans and Davis back to Evans' house. The evidence further established that both Sino and the defendant were angry at Wright, that the cartridges the defendant fired matched those found in Sino's bedroom,

and that the defendant received something from the older male immediately prior to the shooting. From this evidence, the jury could reasonably have inferred that the object given to the defendant was the gun used in the shooting and that it was mutually possessed by the defendant and Sino. Finally, the evidence showed that the defendant aimed the gun directly at the three men when he fired.

Further, the jury could have reasonably found from the evidence that the defendant and the others intentionally agreed to carry out Sino's threat to escalate the existing level of conflict to shooting, and that they intended to cause serious physical injury to Wright in so doing. The shooting itself provides proof of an overt act in furtherance of the agreement. See *State* v. *Pinnock*, 220 Conn. 765, 772, 601 A.2d 521 (1992). We conclude that when viewed in a light most favorable to upholding the verdict, the evidence was sufficient to allow the jury to find that the state proved the defendant guilty of conspiracy to commit assault in the first degree beyond a reasonable doubt.

## II

The defendant next claims that the trial court should have granted his motion for a new trial pursuant to Practice Book § 902 because the verdicts were against the weight of the evidence. The crux of his argument is that the state's three principle witnesses all had prior criminal records, while the defendant and his witnesses did not. For that reason, he asserts, no reasonable jury could have believed the state's witnesses or disbelieved his. Although the defendant failed to make this claim when he moved for a new trial, he now seeks review under the plain error doctrine pursuant to Practice Book § 4185.[4] We decline to grant review.

[4] Practice Book § 4185 provides in pertinent part: "The court on appeal shall not be bound to consider a claim unless it was distinctly raised at trial

"Plain error review is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. . . . *State* v. *Webb*, 37 Conn. App. 722, 730–31, 657 A.2d 711 (1988)." *State* v. *Krzywicki*, 39 Conn. App. 832, 837, 668 A.2d 387 (1995). Here, the defendant's claim does not involve plain error because he does not raise doubt as to the fairness and integrity of the trial. The only real issue raised by this claim is the credibility of the witnesses. As we have stated many times, "[w]e do not sit as a thirteenth juror who may cast a vote against the verdict based upon our feeling that some doubt of guilt is shown by the cold printed record. . . . Rather, we must defer to the jury's assessment of the credibility of the witnesses based on its firsthand observation of their conduct, demeanor and attitude." (Internal quotation marks omitted.) *State* v. *White*, 229 Conn. 125, 142–43, 640 A.2d 572 (1994).

## III

The defendant next claims that the trial court should have granted his motions for a mistrial and for a new trial after a state's witness testified that the defendant was a drug dealer.[5] The defendant argues that the com-

---

or arose subsequent to the trial. The court may. in the interests of justice notice plain error not brought to the attention of the trial court. . . ."

[5] When asked whether he knew the defendant prior to the shooting, Wright testified as follows:

"Q. Okay. Prior to April 23, prior to the shooting incident, did you know who Ray was?

"A. Yeah, I did.

"Q. And how was it that you came to know him?

"A. Well, he showed up, you know, not long after—There weren't that many Spanish people living on the street before Ray came. They started adding up, you know, slowly but surely. He was one of the last ones to show up around there, you know, and he was about one of the only ones that had an automobile and, you know, he sold drugs."

ment was so prejudicial to him that he was deprived of his state and federal due process rights to a fair trial.

The record reveals that after the challenged comment was made, the jury was excused and the defendant moved for a mistrial. Outside the presence of the jury, the state maintained that it had not anticipated the response concerning drugs and that it would not object to having the comment stricken. The trial court warned the witness not to mention drugs again and informed counsel that it would order the remark stricken and "caution the jury." The court denied the motion for a mistrial and the jury was allowed to return.

During the discussion, the defendant did not respond to the court's denial of his motion for a mistrial, nor did he object to the court's ruling that it would strike the challenged testimony and caution the jury. Moreover, the defendant did not make any requests relative to the court's curative instruction. Upon the jury's return, the trial court gave a curative instruction.[6] In its final charge, the court reminded the jury that any evidence that had been stricken was not evidence for their consideration.

"Due process requires that a criminal defendant be given a fair trial before an impartial jury. U.S. Const.,

[6] The trial court gave the following curative instruction: "Alright. Right before we excused the jury for a moment, Mr. Wright's answer actually went beyond the question that was asked as to where he knew the defendant from and he gave an answer that was not part of this case, it's not evidence in this case, it has nothing to do with this case, it has not been charged, and it is not proper. It's not something for consideration. It's always difficult when a little water falls out of the cup to try to get it all back in and mop it up, but things like this do occasionally happen. As I've told you time and time again, the defendant is innocent until proven guilty. This statement has nothing to do with this case, so it's not something to even be considered in the question of innocence or guilt of this case or any allegations similar to what Mr. Wright referred to. Mr. Wright didn't understand that he couldn't say something like that, but he now understands and we will proceed, and I just again urge the jury to wipe it out of your mind, it has nothing to do with this case, and we'll try to keep it on track with relevant evidence only."

amend XIV; Conn. Const., art. I, § 8; *State* v. *Brigandi,* 186 Conn. 521, 542, 442 A.2d 927 (1982). A new trial, however, is not required every time a juror has been placed in a potentially compromising situation . . . [because] it is virtually impossible to shield jurors from every contact or influence that might theoretically affect their vote. . . .

"The general rule in Connecticut is that a mistrial is granted only where it is apparent to the court that as a result of some occurrence during trial a party has been denied the opportunity for a fair trial. . . . The trial court enjoys wide discretion in deciding whether a mistrial is warranted . . . and its evaluation as to events occurring before the jury is to be accorded the highest deference. . . . Every reasonable presumption will be given in favor of the trial court's ruling . . . because the trial court, which has a firsthand impression of the jury, is in the best position to evaluate the critical question of whether the juror's or jurors' exposure has prejudiced a defendant. . . . It is only when an abuse of discretion is manifest or where an injustice appears to have been done that a reversal will result from the trial court's exercise of discretion." (Citations omitted; internal quotation marks omitted.) *State* v. *Salerno,* 36 Conn. App. 161, 169–70, 649 A.2d 801 (1994), appeal dismissed, 235 Conn. 405, 666 A.2d 821 (1995) (certification improvidently granted).

The trial court's remedy was appropriate; its denial of the motion for mistrial was proper. The single comment by Wright was immediately stricken and the jury was instructed to disregard it and not to consider it as evidence. Moreover, the trial court made it clear that the remark did not impact on the charges against the defendant. We conclude that no injustice occurred nor was there a manifest abuse of discretion exercised by the trial court.

## IV

The defendant's remaining five claims of impropriety on the part of the trial court are unpreserved and without merit. The defendant took no relevant exceptions to the court's charge, nor, as far as can be determined from the record, did he file any requests to charge. Further, his claims have, for the most part, been ruled on by this court and our Supreme Court.[7]

"Legal contentions, like the currency, depreciate through over-issue. The mind of an appellate judge is habitually receptive to the suggestion that a lower court committed an error. But receptiveness declines as the number of assigned errors increases. Multiplicity hints

---

[7] As to the defendant's unpreserved missing witness claim, see *State* v. *Jones*, 205 Conn. 723, 735, 535 A.2d 808 (1988); as to his unpreserved evidentiary claim involving photographs from a police file, see *State* v. *Peary*, 176 Conn. 170, 175–76, 405 A.2d 626 (1978), cert. denied, 441 U.S. 966, 99 S. Ct. 2417, 60 L. Ed. 2d 1072 (1979); as to his unpreserved claim that the trial court's instructions undermined the presumption of innocence and the state's burden of proof, some of the language he now complains of on appeal he requested at trial. Further, the instructions in their entirety are similar to those approved previously by this court and the Supreme Court. See *State* v. *Ellis*, 232 Conn. 691, 657 A.2d 1099 (1995); *State* v. *Francis*, 228 Conn. 118, 635 A.2d 762 (1993); *State* v. *Walton*, 227 Conn. 32, 630 A.2d 990 (1993); *State* v. *Tucker*, 226 Conn. 618, 629 A.2d 1067 (1993); *State* v. *Stanley*, 223 Conn. 674, 613 A.2d 788 (1992); *State* v. *Dyson*, 217 Conn. 498, 586 A.2d 610 (1991); *State* v. *Johnson*, 214 Conn. 161, 571 A.2d 79 (1990); *State* v. *Thomas*, 214 Conn. 118, 570 A.2d 1123 (1990); *State* v. *Smith*, 35 Conn. App. 51, 644 A.2d 923 (1994); *State* v. *Crosby*, 34 Conn. App. 261, 641 A.2d 406, cert. denied, 230 Conn. 903, 644 A.2d 916 (1994); *State* v. *Bush*, 33 Conn. App. 253, 635 A.2d 820 (1993), cert. denied, 228 Conn. 923, 638 A.2d 37 (1994); *State* v. *Leonard*, 31 Conn. App. 178, 623 A.2d 1052 (1993). As to the defendant's claim that the trial court emphasized the defendant's interest in the outcome of the case when charging on the credibility of witnesses, see *State* v. *Williams*, 220 Conn. 385, 599 A.2d 1053 (1991). As to the defendant's final claim that the trial court's action although singly may not be improper but becomes so when cumulated, "[a]ssignments of error that are merely mentioned but not briefed beyond a statement of the claim will be deemed abandoned and will not be reviewed by this court." *Bowman* v. *1477 Central Avenue Apartments, Inc.*, 203 Conn. 246, 250 n.3, 524 A.2d 610 (1987). We, therefore, decline to review it.

at lack of confidence in any one [issue] . . . . [M]ulti-plying assignments of error will dilute and weaken a good case and will not save a bad one. . . . Most cases present only one, two, or three significant questions. . . . Usually . . . if you cannot win on a few major points, the others are not likely to help. . . . The effect of adding weak arguments will be to dilute the force of the stronger ones." (Citations omitted; internal quotation marks omitted.) *State* v. *Pelletier,* 209 Conn. 564, 567, 552 A.2d 805 (1989).

The judgment is affirmed.

In this opinion the other judges concurred.