## STATE OF CONNECTICUT *v.* EDWARD SMITH
## (AC 21572)

Foti, Schaller and West, Js.

Argued September 23—officially released December 3, 2002

*David B. Bachman,* for the appellant (defendant).

*Eileen F. McCarthy,* assistant state's attorney, with whom, on the brief, were *David I. Cohen,* state's attorney, and *James Bernardi,* senior assistant state's attorney, for the appellee (state).

*Opinion*

FOTI, J. The defendant, Edward Smith, appeals from the judgment of conviction, rendered after a jury trial, of risk of injury to a child in violation of General Statutes (Rev. to 1997) § 53-21 (1)[1] and possession of narcotics in violation of General Statutes § 21a-279 (a).[2] On appeal, the defendant claims that (1) the evidence adduced at trial was insufficient to support his conviction of risk of injury to a child[3] and (2) the court improperly failed to inquire adequately in regard to his request for new counsel and improperly denied his request for

[1] General Statutes (Rev. to 1997) § 53-21 provides in relevant part: "Any person who (1) wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that the life or limb of such child is endangered, the health of such child is likely to be injured or the morals of such child are likely to be impaired, or does any act likely to impair the health or morals of any such child . . . shall be guilty of a class C felony."

[2] General Statutes § 21a-279 (a) provides in relevant part: "Any person who possesses or has under his control any quantity of any narcotic substance, except as authorized in this chapter, for a first offense, may be imprisoned not more than seven years or be fined not more than fifty thousand dollars, or be both fined and imprisoned . . . ."

The defendant was convicted of the offense under § 21a-279 (a) as a lesser offense included within the original charge of possession of narcotics with intent to sell in violation of General Statutes § 21a-277 (a). As a result of that conviction, the jury did not need to decide the third charge in the information, namely, possession of narcotics with intent to sell within 1500 feet of a public housing project in violation of General Statutes § 21a-278a (b).

[3] The defendant makes no claim that the evidence was insufficient to support his conviction under General Statutes § 21a-279 (a) for possession of narcotics.

a continuance so that he could obtain new counsel. We affirm, in part, and reverse, in part, the judgment of the trial court.

The jury could have reasonably found the following facts. In the early afternoon hours on January 29, 1998, officers from the Norwalk police department executed a search and seizure warrant at an apartment in a public housing project in Norwalk. After arriving at the scene and announcing themselves and their purpose, the officers used a battering ram to gain entry to the apartment. Upon entering the two bedroom apartment, the officers discovered the defendant lying on a bed in a semiconscious state. The officers also discovered a small male child[4] sitting nearby, behind the defendant, on the bed. After the officers brought the defendant and the child to an adjoining living room, they searched and secured the bedroom. While conducting their search, they found an aluminum foil packet on top of the mattress and bedding. The packet contained a "rock" of crack cocaine that was 0.6 grams in weight and 82.8 percent pure. The quality and quantity of that crack cocaine was such that it could have been divided into six or seven adult doses. It would have taken an average person approximately two hours of continuous smoking to consume the entire quantity of crack cocaine found on the bed by the officers. Officers also found a BB pistol in a drawer of the nightstand next to the bed, a bottle of lactose, which is a substance commonly used to dilute cocaine, as well as sixty-six small Ziploc brand glassine bags. The defendant admitted living in the apartment, and officers found an envelope addressed to him in a nearby dresser drawer in the bedroom. Additional facts will be set forth as necessary.

---

[4] The record fails to disclose the exact age of the child. One officer, while testifying at trial, referred to the child as an "infant." Another officer testified that he estimated the age of the child to be "no more than one year old."

I

The defendant first claims that the state failed to present sufficient evidence to sustain his conviction for risk of injury to a child. Specifically, he claims that the state failed to show actual, substantial danger so as to demonstrate that the child was in a situation such that his "life or limb [was] endangered" or that his "health [was] likely to be injured . . . ." General Statutes (Rev. to 1997) § 53-21 (1). The defendant also claims that the state failed to demonstrate that he acted "wilfully."[5] We agree that the evidence does not support the defendant's conviction under § 53-21.

"The standard of review employed in a sufficiency of the evidence claim is well settled. [W]e apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . This court cannot substitute its own judgment for that of the jury if there is sufficient evidence to support the jury's verdict." (Citations omitted; internal quotation marks omitted.) State v. James, 237 Conn. 390, 435–36, 678 A.2d 1338 (1996).

The state charged the defendant with one count of risk of injury to a child, alleging that he "did wilfully and unlawfully cause and permit . . . a child under the age of sixteen years, to be placed in such a situation that the life or limb of such child was endangered, the health of such child was likely to be injured or the morals of such child was likely to be impaired in violation of [§ 53-21 (1)]."[6] The case was tried and defended

---

[5] The record reflects that the defendant sought a judgment of acquittal at trial on those grounds, thereby preserving the issue for our review.

[6] The defendant claims that the provision of General Statutes (Rev. to 1997) § 53-21 (1) that concerns a person who causes or permits the likely impairment of a child's morals is not at issue in this case. The state, however,

on the theory that the child's health was endangered by being in close proximity, perhaps as close as one foot, to the aluminum wrapped crack cocaine rock and that the defendant wilfully created that situation, which was likely to impair the health of the child.

The state must prove three essential elements to sustain a conviction under § 53-21 (1). The state must prove that "(1) . . . the defendant's conduct was wilful or unlawful, (2) the defendant created, acquiesced in or was deliberately indifferent to a situation that was likely to be harmful to the victim's health or morals, and (3) the victim was less than sixteen years old." *State* v. *Payne*, 40 Conn. App. 1, 13, 669 A.2d 582 (1995), aff'd, 240 Conn. 766, 695 A.2d 525 (1997). Section 52-21 does not require the state to prove that the health of the child actually was impaired, but only that the conduct or the acts of the defendant were such that the health of the child was likely to be impaired. See *State* v. *Apostle*, 8 Conn. App. 216, 242–43, 512 A.2d 947 (1986); see also *State* v. *Branham*, 56 Conn. App. 395, 402, 743 A.2d 635 (statute covers situation in which there need be only risk of injury for defendant to be convicted), cert. denied, 252 Conn. 937, 747 A.2d 3 (2000).

In the present case, the parties do not dispute that the child was younger than sixteen years of age. The

does not concede that this is true. As we have stated, the state did not argue its case on that ground at trial. "Although exposing a child, old enough to appreciate what was transpiring, to selling [narcotics] might be considered as endangering the morals of that child"; *State* v. *Padua*, 73 Conn. App. 386, 393, 808 A.2d 361 (2002); the state made no claim herein that the child was in fact old enough. In prosecutions under the impairment of morals provision of § 53-21, the state need not prove the child's awareness of the conduct at issue; what is necessary is that the state prove that the defendant's conduct was *likely* to impair the morals of the child victim. See *State* v. *Laracuente*, 205 Conn. 515, 521–23, 534 A.2d 882 (1987), cert. denied, 485 U.S. 1036, 108 S. Ct. 1598, 99 L. Ed. 2d 913 (1988); *State* v. *Cutro*, 37 Conn. App. 534, 541–42, 657 A.2d 239 (1995). In this case, the state did not even claim, let alone produce evidence to support a finding, that the child, perhaps less than one year old, possessed the capacity to appreciate or to comprehend the allegedly prohibited conduct to which he was exposed.

defendant argues that there was no evidence that he had created a situation that was likely to impair the child's health. The state adduced evidence that the child was on a bed with the defendant. At that time, the defendant was in a semiconscious state. An amount of rock cocaine, 0.6 grams in weight and 82.8 percent pure, was wrapped in foil on top of the mattress. The evidence also established that the child may have been as close as one foot from the foil encased cocaine.

The state posits that an "average juror could surmise that because cocaine is an illegal narcotic substance, its close proximity to the toddler created a potentially harmful situation." The state argues that the expert testimony it presented as to the drug's impact, when considered with the jurors' life experiences regarding the propensities of young children, was sufficient to allow the jury to find that "the danger to this child was quite real and close at hand."

Given the unique facts of this case, we do not agree that the evidence was sufficient to sustain the conviction. Our holding rests primarily on the fact that the state failed to produce any evidence to demonstrate the likely effect of the substance on the child had it been ingested.

This court recently concluded that a jury cannot be expected, absent the assistance of expert testimony, to understand or to appreciate the possible detrimental effects of eating marijuana or solely being in its presence. *State* v. *Padua*, 73 Conn. App. 386, 396–97, 808 A.2d 361 (2002). In *Padua*, the state failed to present expert testimony to demonstrate that being near or having access to marijuana can be injurious to the health of a child. Accordingly, we held that the state had failed to demonstrate, beyond a reasonable doubt, that the defendant had created a risk of injury to the victim under § 53-21. Id., 398.

We are faced with an analogous situation. The jury heard expert testimony as to the effect of crack cocaine on an adult when such adult smokes the cocaine. There is no evidence as to the effect that this cocaine, in such "rock" form, would have had on the child had it been ingested. The jury was expected to apply its knowledge of the ordinary affairs of life to its deliberations. Life experience certainly teaches that young children generally are ambulatory, curious, and capable of tearing, pulling at and opening objects that are folded and closed. Additionally, such knowledge likely includes the fact that children often put things in their mouths. This court cannot infer, however, that the average juror has common knowledge or life experience as to whether crack cocaine would dissolve if a child placed it in his or her mouth, if crack cocaine is chewable, or whether crack cocaine would have had any deleterious effect at all on a small child who swallowed that substance. In fact, the only evidence adduced by the state as to the possible effect of that crack cocaine on the child was that it was "not a water soluble cocaine" and that smoking crack cocaine gives that substance its effect.

The evidence merely demonstrated that the child was in the presence of cocaine that was wrapped in foil. There was no evidence as to whether the child's skills were such that he could have reached the packet or that he possessed the manual dexterity to have opened it to gain access to the crack cocaine. Assuming, however, that the jury reasonably could have found that the child possessed the ability to ingest the crack cocaine, we still recognize the important fact that there was no competent evidence as to whether such crack cocaine was likely to have been harmful to the child had it been ingested. Competent evidence did not support a finding by the jury that the defendant, by merely creating a situation in which the child was in the presence

of the crack cocaine, had created a situation that was likely to be injurious to the child's health.

In *Padua*, this court stated that "[w]hile we certainly do not condone a child's being put in this type of situation, we cannot conclude that the jury, without the assistance of expert testimony, could have been expected to understand or to appreciate the possible detrimental physical effects of eating marijuana or solely being in its presence." Id., 396. That same rationale applies with equal force to the present case.

Accordingly, we reverse the defendant's conviction for the crime of risk of injury to a child in violation of § 53-21 and remand the case to the trial court with direction to render a judgment of acquittal on that count.[7]

## II

The defendant next claims that the court improperly failed to inquire adequately in regard to his request for new counsel and improperly denied his request for a continuance so that he could obtain new counsel. We are not persuaded.

The record discloses the following additional facts. Two attorneys, assistant public defender Elizabeth Reid and special public defender Stephen Feinstein, first represented the defendant in this matter. The defendant failed to appear in court on several occasions in 1998. On May 18, 1999, the defendant filed a motion to dismiss Feinstein as his counsel and filed a grievance against Feinstein. The court denied the defendant's motion.

---

[7] The defendant makes no claim that the evidence was insufficient to support his conviction under General Statutes § 21a-279 (a) for possession of narcotics.

Because we conclude as we do, we find it unnecessary to address the defendant's claim that the state failed to prove beyond a reasonable doubt that he acted "wilfully" to support a conviction under General Statutes (Rev. to 1997) § 53-21.

On June 1, 1999, Feinstein informed the court that the defendant was attempting to hire private counsel. The court scheduled the case for trial on June 15, 1999. The court thereafter changed the venue of the case from Norwalk to Stamford and, on September 8, 1999, appointed another special public defender, Christian W. Bujdud, to represent the defendant. On November 17, 1999, the defendant filed a motion for a speedy trial. On December 2, 1999, the court, having transferred the case from part B to part A, appointed special public defender Wayne R. Keeney to represent the defendant.

On March 9, 2000, as jury selection was about to commence, Keeney informed the court that the defendant wanted to be represented by different counsel. The court asked Keeney why he believed that the defendant was seeking alternate representation. Keeney replied, "I think—from the way I understand it, we have a difference of opinion on tactics." The court inquired directly of the defendant. The defendant communicated to the court his belief that Keeney had failed to meet with him, was not helpful and did not discuss the case with him.[8] Keeney did not represent that he was not prepared for trial, that a conflict existed or that he requested a further continuance in the proceedings.

The court informed the defendant that in light of the stage of the proceedings, his complaints did not constitute good cause as to warrant a change in counsel. The court also informed the defendant that it respected Keeney's abilities and that Keeney "has a pretty consis-

---

[8] The defendant addressed the court in relevant part as follows: "Me and Mr. Keeney is having a conflict, a conflict of interest between me and him because of he don't come and see me, he don't discuss my case. Ever since— I been down seventeen months now, and ever since I entered the Stamford courthouse and had him represent me, we don't talk about my case; he'd be on somebody else's case. He don't come and see me. He tells me that he's going to come and see me, we'll talk about, discuss my case . . . . I ain't seen him in four days. We supposed to went over the matter, Your Honor, and also that he's not, also that he's not being helpful."

tent winning record around the criminal courts . . . ." The court denied the motion.

We review the defendant's two part claim under an abuse of discretion standard of review. "[A] trial court has a responsibility to inquire into and to evaluate carefully all substantial complaints concerning court-appointed counsel . . . . The extent of that inquiry, however, lies within the discretion of the trial court. . . . A trial court does not abuse its discretion by failing to make further inquiry where the defendant has already had an adequate opportunity to inform the trial court of his complaints." (Citations omitted; internal quotation marks omitted.) *State* v. *Ruffin*, 48 Conn. App. 504, 514, 710 A.2d 1381, cert. denied, 245 Conn. 910, 718 A.2d 18 (1998).

Despite the fact that courts must always safeguard a defendant's constitutional right to the effective assistance of counsel, the right to obtain alternate counsel cannot be exercised in an unbridled manner. "[A]ppellate tribunals look with a jaundiced eye at complaints regarding adequacy of counsel made on the eve of trial . . . . Such a request must be supported by a substantial reason and, [i]n order to work a delay by a last minute discharge of counsel there must exist exceptional circumstances. . . . Inherent in these limitations is a concern for unwarranted interruptions in the administration of justice. . . . The standard of review to be applied when reviewing a denial of a request for alternate counsel is whether the trial court abused its discretion in determining that a factual basis did not exist for granting the request." (Citations omitted; internal quotation marks omitted.) *State* v. *Miller*, 69 Conn. App. 597, 611, 795 A.2d 611, cert. denied, 260 Conn. 939, 802 A.2d 91 (2002).

We first conclude that the court's inquiry into the defendant's request was sufficient. The court properly

permitted the defendant to communicate his reasons for the request. On the basis of the defendant's observations as well as Keeney's representation that the defendant merely disapproved of his trial tactics, we conclude that the court conducted an adequate inquiry. We next conclude that the court, having considered the claims made by the defendant and having found them not to be substantial, properly concluded that the defendant did not demonstrate good cause to work a change in counsel. The record before us reflects that the defendant failed to demonstrate the existence of exceptional circumstances that are necessary to warrant a last minute delay in the proceedings to obtain a change of counsel. Accordingly, the court did not abuse its discretion in denying the defendant's request.

The judgment is reversed only as to the conviction of risk of injury to a child and the case is remanded with direction to render a judgment of acquittal on that count. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.