STATE OF CONNECTICUT *v.* EDWARD SMITH
(SC 16935)

Sullivan, C. J., and Norcott, Katz, Palmer and Zarella, Js.

Argued September 8, 2004—officially released March 29, 2005

*Eileen F. McCarthy*, assistant state's attorney, with whom, on the brief, were *David I. Cohen*, state's attorney, and *James Bernardi*, supervisory assistant state's attorney, for the appellant (state).

*David B. Bachman*, special public defender, for the appellee (defendant).

SULLIVAN, C. J. The state appeals, following our grant of certification,[1] from the judgment of the Appellate Court reversing the conviction of the defendant, Edward Smith, on a charge of risk of injury to a child[2] in violation of General Statutes (Rev. to 1997) § 53-21 (1).[3] The state claims that the Appellate Court improperly concluded that the evidence was insufficient to support the defendant's conviction under § 53-21 (1). We agree and reverse the judgment of the Appellate Court.

The opinion of the Appellate Court sets forth the following facts that the jury reasonably could have found. "In the early afternoon hours on January 29, 1998, officers from the Norwalk police department executed a search and seizure warrant at an apartment in a public housing project in Norwalk. After arriving at the scene and announcing themselves and their purpose, the officers used a battering ram to gain entry to the apartment. Upon entering the two bedroom apartment, the officers discovered the defendant lying on a bed in a semiconscious state. The officers also discovered a small male child[4] sitting nearby, behind the defen-

---

[1] We granted certification limited to the following issue: "Did the Appellate Court properly conclude that the evidence was insufficient to support the defendant's conviction under General Statutes (Rev. to 1997) § 53-21?" *State v. Smith,* 262 Conn. 948, 817 A.2d 108 (2003).

[2] The Appellate Court affirmed the defendant's conviction of possession of narcotics in violation of General Statutes § 21a-279 (a). *State v. Smith,* 73 Conn. App. 809, 810, 819, 809 A.2d 1146 (2002). That judgment is not at issue in this appeal.

[3] General Statutes (Rev. to 1997) § 53-21 provides in relevant part: "Any person who (1) wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that the life or limb of such child is endangered, the health of such child is likely to be injured or the morals of such child are likely to be impaired, or does any act likely to impair the health or morals of any such child . . . shall be guilty of a class C felony."

[4] "The record fails to disclose the exact age of the child. One officer, while testifying at trial, referred to the child as an 'infant.' Another officer

dant, on the bed. After the officers brought the defendant and the child to an adjoining living room, they searched and secured the bedroom. While conducting their search, they found an aluminum foil packet on top of the mattress and bedding. The packet contained a 'rock' of crack cocaine that was 0.6 grams in weight and 82.8 percent pure. The quality and quantity of that crack cocaine was such that it could have been divided into six or seven adult doses. It would have taken an average person approximately two hours of continuous smoking to consume the entire quantity of crack cocaine found on the bed by the officers. Officers also found a BB pistol in a drawer of the nightstand next to the bed, a bottle of lactose, which is a substance commonly used to dilute cocaine, as well as sixty-six small Ziploc brand glassine bags. The defendant admitted living in the apartment, and officers found an envelope addressed to him in a nearby dresser drawer in the bedroom." *State* v. *Smith*, 73 Conn. App. 809, 811, 809 A.2d 1146 (2002).

The defendant was charged in a three count amended information with risk of injury to a child in violation of § 53-21 (1), possession of narcotics with intent to sell in violation of General Statutes § 21a-277 (a)[5] and possession of narcotics with intent to sell within 1500 feet of a public housing project in violation of General Statutes § 21a-278a (b).[6] The case was tried to a jury.

---

testified that he estimated the age of the child to be 'no more than one year old.' " *State* v. *Smith*, 73 Conn. App. 809, 811 n.4, 809 A.2d 1146 (2002).

[5] General Statutes § 21a-277 (a) provides in relevant part: "Any person who . . . possesses with the intent to sell . . . any controlled substance . . . for a first offense, shall be imprisoned not more than fifteen years and may be fined not more than fifty thousand dollars or be both fined and imprisoned . . . ."

[6] General Statutes § 21a-278a (b) provides in relevant part: "Any person who violates section 21a-277 or 21a-278 by . . . possessing with the intent to sell . . . any controlled substance in or on, or within one thousand five hundred feet of . . . a public housing project . . . shall be imprisoned for a term of three years . . . ."

At trial, the state presented expert testimony by Michael Murray, a detective with the Norwalk police department, pertaining to the methods of consuming crack cocaine and its effects. Murray testified that, because crack cocaine is not water soluble, it cannot be sniffed like powder cocaine. He also testified that "[y]ou must smoke crack in order to get any effect out of it." Crack cocaine produces a more intense but shorter "high" than powder cocaine. A typical dose, about one tenth of a gram, can be consumed in approximately thirty seconds and produces a high that lasts about twenty minutes.

The jury returned a verdict of guilty on the charge of risk of injury to a child and on the lesser included offense of possession of narcotics in violation of General Statutes § 21a-279 (a). The defendant appealed to the Appellate Court, which reversed the defendant's conviction on the charge of risk of injury to a child. The court concluded that there was insufficient evidence to support a finding that the defendant had placed the child's health at risk in the absence of expert testimony on the detrimental effects of orally ingesting crack cocaine. State v. Smith, supra, 73 Conn. App. 816. The court also concluded that, because "the state did not even claim, let alone produce evidence to support a finding, that the child, perhaps less than one year old, possessed the capacity to appreciate or to comprehend the allegedly prohibited conduct to which he was exposed"; id., 812–13 n.6; there was insufficient evidence to support a finding that the defendant's conduct had impaired the morals of the child.

This appeal followed. The state claims that the Appellate Court improperly determined that: (1) in the absence of expert testimony, the evidence was insufficient to establish that oral ingestion of the crack cocaine would have placed the child's health at risk; and (2) the evidence did not establish that the defendant's use

and possession of cocaine in the presence of the child was inimical to the child's morals. We agree with the first claim and, therefore, need not reach the second claim.[7]

As a preliminary matter, we set forth the standard of review. "In reviewing a sufficiency of the evidence claim, we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the jury reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . In evaluating evidence, the trier of fact is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . The trier may draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical. . . . This does not require that each subordinate conclusion established by or inferred from the evidence, or even from other inferences, be proved beyond a reasonable doubt . . . because this court has held that a jury's factual inferences that support a guilty verdict need only be reasonable. . . .

"[A]s we have often noted, proof beyond a reasonable doubt does not mean proof beyond all possible doubt . . . nor does proof beyond a reasonable doubt require acceptance of every hypothesis of innocence posed by the defendant that, had it been found credible by the

---

[7] We note that, because the Appellate Court reversed the defendant's conviction under § 53-21 on the basis of insufficient evidence, it did not reach the defendant's claim on appeal to that court that the state had failed to prove beyond a reasonable doubt that he had acted "wilfully," as required by § 53-21. *State* v. *Smith*, supra, 73 Conn. App. 816 n.7. The defendant did not raise this issue as an alternate ground for affirmance on appeal to this court. Accordingly, we deem the claim abandoned. See *Tetreault* v. *Eslick*, 271 Conn. 466, 473 n.7, 857 A.2d 888 (2004).

trier, would have resulted in an acquittal. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the jury's verdict of guilty. . . . Furthermore, [i]n [our] process of review, it does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct. . . . It is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence." (Citation omitted; internal quotation marks omitted.) *State* v. *Padua*, 273 Conn. 138, 147, 869 A.2d 192 (2005).

General Statutes (Rev. to 1997) § 53-21 provides in relevant part that "[a]ny person who (1) wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that the life or limb of such child is endangered, the health of such child is likely to be injured or the morals of such child are likely to be impaired, *or* does any act likely to impair the health or morals of any such child . . . shall be guilty of a class C felony." (Emphasis added.) "The general purpose of § 53-21 is to protect the physical and psychological well-being of children from the potentially harmful conduct of adults. . . . Our case law has interpreted § 53-21 (1) as comprising two distinct parts and criminalizing two general types of behavior likely to injure physically or to impair the morals of a minor under sixteen years of age: (1) deliberate indifference to, acquiescence in, or the creation of situations inimical to the minor's moral or physical welfare . . . and (2) acts directly perpetrated on the person of the minor and injurious to his moral or physical well-being. . . . Thus, the first part of § 53-21 (1) prohibits the creation of *situations* detrimental to a child's welfare, while the second part proscribes injuri-

ous *acts* directly perpetrated on the child. In the present matter, we are concerned only with the first portion of § 53-21 (1), relating to the creation of detrimental situations.

"Under the situation portion of § 53-21 (1), the state need not prove actual injury to the child. Instead, it must prove that the defendant wilfully created a situation that posed a risk to the child's health or morals. . . . The situation portion of § 53-21 (1) encompasses the protection of the body as well as the safety and security of the environment in which the child exists, and for which the adult is responsible." (Citations omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Padua*, supra, 273 Conn. 148.

The state claims that the Appellate Court improperly concluded that the state was required to present expert testimony on the possible detrimental physical effects of the oral ingestion of crack cocaine on a small child. We agree.

Although expert testimony may be helpful in many instances, "it is required only when the question involved goes beyond the field of ordinary knowledge and experience of the trier of fact. . . . The trier of fact need not close its eyes to matters of common knowledge solely because the evidence includes no expert testimony on those matters." (Citations omitted; internal quotation marks omitted.) Id., 149.

This court previously has recognized that the harmful physiological effects of cocaine are within the knowledge and experience of a typical juror. In *State* v. *Willis*, 221 Conn. 518, 520, 605 A.2d 1359 (1992), the defendant was convicted of possessing ninety-four vials of crack cocaine and marijuana. At trial, the state asked its expert witness to discuss the physical effects of cocaine on the human body. The expert testified that "[c]ocaine . . . is readily absorbed across the mucous membranes

of the body; that means through the lining of the mouth or the nose or through the mucosa of the lungs. In this form, it travels very rapidly into the blood stream and therefore [is] carried very rapidly to the rest of the body. . . . Another reaction . . . is the irritation of the myocardium, that is the actual tissue of the heart itself which has been recorded in many cases to cause almost instantaneous death." (Internal quotation marks omitted.) Id., 521. The defendant objected to the testimony and moved for a mistrial. The trial court denied the motion. Id. On appeal, this court concluded that the "portion of [the witness'] testimony wherein he mentioned 'instantaneous death' was not probative of the defendant's guilt and had a tendency to prejudice the defendant . . . ." Id., 524. We also concluded, however, that the admission of the testimony had not deprived the defendant of a fair trial because "it does not seem possible that it would come as a surprise to any juror in 1990, when the defendant was tried, that illicit drugs have harmful physiological effects and that their use may, on occasion, result in death." Id., 525.

Our state law reflects a legislative determination that cocaine is a dangerous drug, particularly when consumed by a young person. Cocaine is a schedule II controlled substance. See General Statutes § 21a-243 (c);[8] Regs., Conn. State Agencies § 21a-243-8 (a) (4).[9]

---

[8] General Statutes § 21a-243 (c) provides: "The Commissioner of Consumer Protection acting upon the advice of the Commission of Pharmacy, may by regulation designate, after investigation, as a controlled substance, a substance or chemical composition containing any quantity of a substance which has been found to have a stimulant, depressant or hallucinogenic effect upon the higher functions of the central nervous system and having a tendency to promote abuse or physiological or psychological dependence or both. Such substances are classifiable as amphetamine-type, barbiturate-type, cannabis-type, cocaine-type, hallucinogenic, morphine-type and other stimulant and depressant substances, and specifically exclude alcohol, caffeine and nicotine. Substances which are designated as controlled substances shall be classified in schedules I to V by regulations adopted pursuant to subsection (a) of this section."

[9] Section 21a-243-8 of the Regulations of Connecticut State Agencies provides in relevant part: "The controlled substances listed in this regulation

Section 21a-279 (a)[10] makes it illegal for a person to possess any quantity of cocaine. General Statutes § 21a-278 (a) prohibits the manufacture, distribution, sale, prescription, dispensing, compounding, transportation with the intent to sell or dispense, possession with the intent to sell or dispense, offering, giving or administration to another person of more than one ounce of cocaine or an aggregate weight of one-half gram or more of cocaine in a free-base form.[11] The penalty for violating this statute is more severe when an adult provides the cocaine to a person under the age of eighteen or induces a person under the age of eighteen to violate the relevant statutes. See General Statutes § 21a-278a (a) and (c).[12] Additionally, possession of cocaine within

are included by whatever official, common, usual, chemical, or trade name designation in Schedule II:

"(a) Any of the following substances, except those narcotic drugs listed in other schedules, whether produced directly or indirectly by extraction from substances of vegetable origin, or independently by means of chemical synthesis, or by combination of extraction and chemical synthesis . . . .

"(4) coca leaves and any salt, compound, derivative, or preparation of coca leaves, and any salt, compound, derivative, or preparation thereof which is chemically equivalent or identical with any of these substances, but not including decocainized coca leaves or extractions which do not contain cocaine or ecgonine . . . ."

[10] General Statutes § 21a-279 (a) provides in relevant part: "Any person who possesses or has under his control any quantity of any narcotic substance, except as authorized in this chapter, for a first offense, may be imprisoned not more than seven years or be fined not more than fifty thousand dollars, or be both fined and imprisoned . . . ."

[11] General Statutes § 21a-278 (a) provides in relevant part: "Any person who manufactures, distributes, sells, prescribes, dispenses, compounds, transports with the intent to sell or dispense, possesses with the intent to sell or dispense, offers, gives or administers to another person one or more preparations, compounds, mixtures or substances containing an aggregate weight of one ounce or more of . . . cocaine or an aggregate weight of one-half gram or more of cocaine in a free-base form . . . and who is not, at the time of such action, a drug-dependent person, shall be imprisoned for a minimum term of not less than five years nor more than twenty years . . . ."

[12] General Statutes § 21a-278a provides in relevant part: "(a) Any person eighteen years of age or older who violates section 21a-277 or 21a-278, and who is not, at the time of such action, a drug-dependent person, by

1500 feet of a public or private elementary or secondary school carries with it an enhanced penalty. See General Statutes § 21a-279 (d).[13] Thus, "the Connecticut legislature has made the clear determination that [cocaine] is a dangerous substance from which children, especially, should be protected. The public is presumed to be aware of that determination." *State* v. *Padua*, supra, 273 Conn. 154–55 (harmful effect of oral ingestion of raw marijuana by child is within common knowledge of typical juror).

We further believe that the harmful effects of orally ingesting cocaine are within the common knowledge of a typical juror. Those effects have been noted in numerous published opinions that have highlighted the threat to the health and safety of a person who hides cocaine in his mouth or swallows it in an attempt to evade discovery. See *Watkins* v. *Battle Creek*, 273 F.3d 682, 684 (6th Cir. 2001) (defendant died in police custody from cocaine overdose after denying he had swallowed any narcotics and refused medical treatment); *State* v. *Sanchez*, 75 Conn. App. 223, 247, 815 A.2d 242 (defendant hospitalized after informing police officers he swallowed cocaine), cert. denied, 263 Conn. 914, 821 A.2d 769 (2003); *State* v. *Duncan*, 67 Conn. App. 29, 33, 786 A.2d 537 (2001) (concerned for defendant's health, police officers brought defendant to hospital after he

distributing, selling, prescribing, dispensing, offering, giving or administering any controlled substance to another person who is under eighteen years of age and is at least two years younger than such person who is in violation of section 21a-277 or 21a-278, shall be imprisoned for a term of two years . . . .

"(c) Any person who employs, hires, uses, persuades, induces, entices or coerces a person under eighteen years of age to violate section 21a-277 or 21a-278 shall be imprisoned for a term of three years . . . ."

[13] General Statutes § 21a-279 (d) provides in relevant part: "Any person who violates subsection (a), (b) or (c) of this section in or on, or within one thousand five hundred feet of, the real property comprising a public or private elementary or secondary school and who is not enrolled as a student in such school or a licensed child day care center . . . shall be imprisoned for a term of two years . . . ."

attempted to swallow crack cocaine); *People* v. *Stevenson*, 51 Cal. App. 4th 1234, 1236, 59 Cal. Rptr. 2d 878 (1996) (defendant who had swallowed "rock" cocaine brought by police to hospital where physicians pumped defendant's stomach to avoid "risk of acute myocardial infarction and hemorrhagic stroke"); *Benson* v. *State*, 698 So. 2d 333 (Fla. App. 1997) (emergency situation created when defendant admitted to officers that he swallowed crack cocaine). Moreover, the potentially deadly effects of orally ingesting crack cocaine have been the subject of published news reports. See, e.g., P. Marks, "Report Pins Death on Swallowing Cocaine— Suspect Was Trying to Hide Evidence, Police Say," Hartford Courant, November 30, 2000, p. B2 (man died of cocaine overdose after swallowing crack cocaine).

Nevertheless, the defendant in the present case argues that the jury could not reasonably have found that oral ingestion of crack cocaine created any risk to the child's health because the evidence established that the drug is not water soluble and must be smoked to have any effect. We are not persuaded. In our view, Murray's testimony that crack cocaine could not be sniffed because it is not water soluble did not suggest, contrary to common sense and to published news reports of the deadly effects of swallowing crack cocaine; see id.; that oral ingestion of crack cocaine is harmless. Numerous substances, such as fats and oils, that are known to be insoluble in water are also known to be digestible. Accordingly, Murray's testimony did not compel the jury to conclude that, if the child had ingested the cocaine, it would not have entered his system. Nor did Murray's testimony that "you must smoke crack in order to get any effect out of it" preclude the jury from finding that oral ingestion posed a risk of injury. That testimony immediately followed testimony by Murray that the drug could not be *sniffed*, and the jury reasonably could have concluded that Mur-

ray was merely explaining how the drug is *customarily* consumed. Accordingly, we conclude that a reasonable juror would not be compelled to conclude from Murray's testimony that the oral ingestion of crack cocaine by a small child would pose no risk to the child's health.

Having concluded that the harmful effects of orally ingesting crack cocaine are within the knowledge of a typical juror, we also conclude that the state was not required to present expert testimony on this issue. It is also within the knowledge of an average juror that children require smaller doses and portions of prescription medicines, meals and other sustenance needed to sustain the life and health of a child. Therefore, it was reasonable for the jury to infer that if the six tenths of a gram of crack cocaine in the defendant's possession constituted six or seven adult doses, ingestion of that amount would have been sufficient to have a deleterious effect on the health of the child.

The defendant further argues that the state failed to present sufficient evidence that the child possessed the manual dexterity to open the piece of aluminum foil wrapped around the rock of crack cocaine. We are not persuaded. The jury heard evidence that the child was "no more than one year old" and was presented with a photograph of the child in which he appeared to be approximately that age.[14] It also heard evidence that, when the police entered the bedroom where the defendant was located, the child was sitting unassisted on the bed approximately one foot away from the defendant. The cocaine was found on the bed between the child and the defendant. It is within the knowledge of an average juror that a child approximately one year old generally is capable of crawling and grasping small

---

[14] In the photograph, the child is lying across the lap of an adult seated on a couch and appears to be a healthy, well developed child. His upper body and legs extend well beyond the adult's lap and his appearance is consistent with that of a normal one year old.

objects. It is also a matter of common knowledge that a child of that age is likely to place any object within reach in its mouth and is likely to chew or suck on the object and, if the object is small enough, to swallow it.[15] Accordingly, the jury reasonably could have concluded that the child's placement on the bed in close proximity to the cocaine made it likely that the child would grasp the wrapped cocaine and, with or without removing the foil, place it in his mouth. The jury also reasonably could have concluded that, if the child had chewed on, sucked or swallowed the wrapped cocaine, the foil would not have prevented the cocaine from entering his system.

The judgment of the Appellate Court is reversed only as to the conviction of risk of injury to a child and the case is remanded to that court with direction to affirm the judgment of the trial court.

In this opinion the other justices concurred.

---

[15] The "rock" of crack cocaine in the defendant's possession weighed 0.6 grams. The jury reasonably could have concluded that a typical one year old child could grasp and swallow an object of this size.