## IN RE ELYSA D. ET AL.*
(AC 29555)

DiPentima, Lavine and Hennessy, Js.

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79-3, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

Argued April 17—officially released August 4, 2009

*David V. DeRosa,* for the appellant (respondent father).

*Karen J. Greenberg,* for the appellee (intervening maternal grandmother).

*Opinion*

LAVINE, J. The respondent father (father) appeals from the judgment of the trial court transferring guardianship of his three minor children to their maternal grandmother,[1] claiming that the trial court, *T. Santos,*

---

[1] The respondent mother and the intervenor, the maternal grandmother, each filed a motion and a petition to transfer custody of the children to the maternal grandmother. The judgment file indicates that the court transferred guardianship of the children to the maternal grandparents, as does the transcript of the court's order. The parties have not raised the discrepancy as an issue on appeal. The order signed by the court indicates that custody was transferred to the maternal grandmother. Because the motions to trans-

*J.*, (1) violated his constitutional right to the effective assistance of counsel in a proceeding affecting his parental rights and (2) improperly transferred custody of the children from the respondent mother (mother) to their maternal grandmother.[2] We affirm the judgment of the trial court.

On January 24, 2007, pursuant to General Statutes § 46b-120 (9), the petitioner, the commissioner of children and families, filed neglect petitions as to both the mother and father for each of their three children. The petitions alleged that the children were neglected in that they were being denied proper care and attention, physically, educationally, emotionally or morally, and that they were being permitted to live under conditions, circumstances or associations injurious to their well-being. Moreover, the petitioner alleged that the parents were unable or unwilling to provide a safe, stable and nurturing environment for the children; the father's parental rights in a half-brother of the children previously had been terminated; the mother had prior involvement with the department of children and families (department), as had the father; the parents have unresolved substance abuse issues that negatively affected their ability to provide appropriate care for the children; the father has unresolved mental health issues that negatively affect his ability to provide appropriate care for the children; the parents have failed to provide appropriate supervision for the children; the father has unresolved anger management issues that negatively affect his ability to provide appropriate care for the

fer custody refer to the maternal grandmother and the order signed by the court indicates that custody was transferred to the maternal grandmother, we assume that the judgment file is in error. Moreover, a judgment file is a clerical document, not the judgment. See *Vasquez* v. *Superior Court*, 102 Conn. App. 394, 412, 925 A.2d 1112, cert. denied, 284 Conn. 915, 931 A.2d 935 (2007).

[2] The maternal grandmother is the appellee on appeal. Counsel for the minor children joins in the brief of the maternal grandmother.

children; and the children have been exposed to domestic violence in the home and to the father's substance abuse. On April 27, 2007, the court, *Graziani, J.*, adjudicated the children neglected and awarded their sole custody to the mother under an order of protective supervision.

On September 20, 2007, the petitioner filed a motion to modify the disposition from that of protective supervision to an order of commitment. See General Statutes § 46b-129. The petitioner alleged that the mother had let a restraining order against the father lapse and had allowed the father to stay in her home with the children for three consecutive days. Concurrently, the petitioner also filed a motion asking that the father be ordered to refrain from entering the mother's home, that his visits with the children be supervised and that he engage substance abuse and mental health services pursuant to the specific steps that were ordered. In addition, the petitioner filed a motion to extend the protective supervision order with respect to the mother for an additional three months.

On October 12, 2007, the mother filed a motion to transfer guardianship of the children to their maternal grandmother, whom the mother deemed a suitable and worthy guardian pursuant to § 46b-129 (d). The mother also filed a motion for permission to relocate outside of Connecticut. On that date, the maternal grandmother, who had intervened in the matter, petitioned the court to grant her guardianship of the children and to remove them to California, where she and the children's maternal grandfather reside. The father objected to removing the children from the state and to transferring guardianship of the children to the maternal grandmother. The court granted permission for the children to travel to California for an extended vacation in November, 2007.

Trial on the motion to transfer guardianship to the maternal grandmother was held on December 7 and 11,

2007.[3] On December 11, 2007, counsel for the mother, Trudy Condio; counsel for the maternal grandmother, Karen J. Greenberg; and counsel for the children, Steven I. Melocowsky; spoke in favor of transferring the children's guardianship to the maternal grandmother. Counsel for the petitioner, assistant attorney general Jason M. Lobo, was unwilling to support the transfer of guardianship or to withdraw the motion for disposition without a family study having been completed in California.[4] The father's counsel, Pamela J. Cabrera, argued against the transfer of guardianship.

On the basis of the evidence presented, the court found that the maternal grandmother was a suitable and worthy guardian. Although it had received a great deal of evidence to warrant transferring the children's guardianship to the maternal grandmother, the court was not ready to do so given the competing interests of the father, the paternal grandparents and the children. The court was open to the father's becoming a placement for the children, if the department made such a recommendation. The court reasoned that if the mother were to live with the children and the maternal grandmother was guardian, the father and his family would be deprived of seeing the children on a frequent basis, as they had in the past. The court therefore extended the children's visitation in California for sixty days to give the father time to meet the specific steps he had signed on September 8, 2006. The court found that the father had not made significant progress toward

---

[3] On December 7, 2007, Steven I. Melocowsky, attorney for the children, presented the testimony of the maternal grandmother in support of her motion to transfer custody of the children to her. On December 11, 2007, Pamela J. Cabrera, the father's counsel, presented testimony from Melissa Knox, a department social worker; Valerie Samuel, a parent education provider; the father; and the paternal grandparents.

[4] Lobo indicated, however, that if the family study from California was favorable to the maternal grandmother, the petitioner likely would be in favor of transferring guardianship.

accomplishing the specific steps, had not provided financial support for the children and remained under an order of supervised visitation. The court gave the father sixty days to demonstrate progress toward satisfying the specific steps. Such progress was necessary to support a decision to deny the motion to transfer guardianship. The parties were ordered to return to court on February 22, 2008.

Subsequently, it came to light that to retain jurisdiction pursuant to the Uniform Child Custody Jurisdiction and Enforcement Act; see General Statutes § 46b-115 et seq.; the court had to rule on the motion to transfer guardianship by February 9, 2008. The parties appeared in court on January 11, 2008, and agreed to continue the trial on January 29, 2008. When the parties and counsel appeared in court on January 29, 2008, Lobo stated that the department had received the California family study and that the petitioner was now joining the mother's motion to transfer guardianship of the children to the maternal grandmother.[5] All parties, except the father, were in favor of transferring the children's guardianship.

On January 29, 2008, the father was represented by new counsel, Matthew Collins. Collins represented to the court that he recently had been appointed to represent the father, was unprepared to do so on that day and asked for a continuance. The court explained to Collins the time constraints it faced and ordered overnight copies of the transcripts of the prior proceedings for Collins to review. The matter was continued until February 1, 2008.

On February 1, 2008, Collins represented to the court that he had subpoenaed the father's therapist, Pamela Neary, a licensed marriage and family therapist, to testify. Neary was, however, unable to appear due to prior commitments. In lieu of Neary's testimony, Collins

---

[5] The petitioner also withdrew her motion to modify disposition.

placed into evidence a letter she had written on the father's behalf.[6] Collins informed the court that he had just received copies of the transcript of the prior proceedings and needed time to review them before summing up. The court agreed to continue the matter and to hold closing arguments on February 4, 2008. Thereafter, all counsel, except Collins, argued that it was in the best interests of the children to transfer their guardianship to the maternal grandmother. Collins questioned why the father was not given until February 22, 2008, to demonstrate the progress he was making toward the specific steps, as originally planned. He noted that the father responded quickly when the court stated in December, 2007, that it wanted to see what progress he could make toward achieving the specific steps.[7] Collins also questioned the stability of the California placement as the maternal grandparents appar-

---

[6] Neary's letter, dated January 28, 2008, stated: "I am writing at the request of [the father] in regards to the treatment that he is currently receiving. [The father] began treatment on January 4, 2007, and has attended a total of four individual therapy sessions. [The father] has used his time in treatment to discuss his desire to get his children back, recounting a great deal of background and historical information. [The father] has been honest and forthcoming in acknowledging the issues that he has gone through both personally and in relation to the Department of Children and Families. He appears to be genuinely concerned about the safety and well-being of his children and reports feeling bonded to them.

"[The father] is currently diagnosed with an Adjustment Disorder with anxious mood. [The father] is struggling to cope and deal effectively with his separation and worry about his children. Most of his focus in treatment is in trying to do the 'right things' to get his children back. He has been working overtime and maintaining regular phone contact with his children while actively trying to secure a two bedroom apartment.

"I feel that [the father] is sincere in his desire to get his children back into his life and should the court determine that this should occur, [the father] has agreed to stay in treatment and access whatever services available to help him meet the demands of a single father.

"Please feel free to contact me if you have any questions or concerns regarding this treatment process or my observations."

[7] In response to an observation from the court, Collins acknowledged that the father had done nothing to comply with the specific steps prior to December 11, 2007.

ently have no family in or prior connection with that state. He also argued that he did not think that the family study completed in California "is really that strong" because it was completed by someone who did not know the family well. Moreover, the mother was not engaged in any program for the treatment of substance abuse.

The parties appeared in court again on February 4, 2008. The court, previously having found the maternal grandmother suitable and worthy, granted the motion to transfer guardianship of the children to her. Prior to doing so, the court made the following observations with respect to the father. The father was not remiss in his love for his children, but he was remiss in "stepping up to the plate." Initially, the father had told the department that he did not want help when services were offered, and he refused to inform the department of his address. It only was in the eleventh hour that the father engaged the services of a therapist. In his therapy, he primarily was concerned about the loss of his children. The therapist was of the opinion that the father did not understand what it means to rear children who were the age of his children. The court stated that it had to consider the best interests of the children in making its decision but acknowledged that placement in California was not ideal. The father, however, had no place for the children to live. He had not addressed his mental health and substance abuse issues until recently, which was too late. The father filed an appeal.

I

The father first claims that the court denied him the constitutional due process right to the effective assistance of counsel in a proceeding affecting his parental rights[8] by (1) permitting Cabrera to be removed as his

---

[8] The relevant statute is General Statutes (Rev. to 2007) § 46b-123e (a), which provides in relevant part: "The judicial authority before whom a . . . family matter described in section 46b-123d is pending shall determine eligibility for counsel for . . . the parents . . . of a child . . . if they are

counsel and substituting Collins[9] when (a) Cabrera did not file a motion to withdraw and (b) there was no hearing to determine whether good cause existed to remove Cabrera and (2) failing to hold a hearing to address the father's concerns about Collins' representation. We conclude that the father's claim is not reviewable, as the trial court did not have an opportunity to balance the factors enunciated in *Mathews* v. *Eldridge*, 424 U.S. 319, 335, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976). See *In re Jonathan M.*, 255 Conn. 208, 227, 764 A.2d 739 (2001).

The following facts are relevant to the father's claim. At the beginning of the continued hearing on February 1, 2008, the court stated that the father had submitted a letter to the court concerning Collins.[10] The court then

unable to afford counsel. Upon a finding that a party is unable to afford counsel, the judicial authority shall appoint the Chief Child Protection Attorney to provide representation. . . . Upon the appointment of the Chief Child Protection Attorney pursuant to this subsection, the Chief Child Protection Attorney shall assign the matter to an attorney under contract with the Chief Child Protection Attorney to provide such representation."

In his brief, the father refers to General Statutes § 46b-123e (b), as amended by Public Acts 2007, No. 07-159, § 4. That amendment, however, was not in effect at the time the neglect petitions were filed or at the time Cabrera was appointed to represent the father.

[9] Although the father states that he was denied the effective assistance of counsel, he also appears to claim that he was denied counsel of his choice. As has been noted in the context of criminal trials, the "right to counsel of *choice*, unlike the *right* to counsel . . . is not absolute. An indigent defendant has no right to have a particular attorney represent him and therefore must demonstrate 'good cause' to warrant substitution of counsel." (Emphasis in original.) *United States* v. *Iles*, 906 F.2d 1122, 1130 (6th Cir. 1990); see also *State* v. *Vega*, 259 Conn. 374, 391, 788 A.2d 1221 (disagreement with attorney's strategic and tactical decisions not good cause), cert. denied, 537 U.S. 836, 123 S. Ct. 152, 154 L. Ed. 2d 56 (2002); *State* v. *Smith*, 73 Conn. App. 809, 819, 809 A.2d 1146 (2002) (defendant merely disapproved of counsel's trial tactics), rev'd in part on other grounds, 273 Conn. 204, 869 A.2d 171 (2005).

[10] The letter to which the court refers was not marked for identification or made a court exhibit. In the appendix to his appellate brief, the father has included a copy of a document entitled motion to withdraw attorney that was date stamped by the trial court on February 1, 2008. The document does not conform to our rules of practice in that it is handwritten, does not

stated: "Let me just explain to you how the system works. In this case, you were represented by [Cabrera], an attorney who was appointed in the usual course from the list of people that we have as our contract attorneys. For some reason or another, and I do not know what any of the specifics are, she has been removed from this list. So, because of the nature of this case, and the fact that there is urgency to proceed with this matter because of the situation, I immediately requested that another attorney be appointed. I do not have any choice as to who that is. I just tell the clerk, immediately inform the proper person who is to appoint somebody because you are going to be left without an attorney for a trial, and it is my obligation to make sure you are represented. We did that, and Mr. Collins was appointed. The clerk ordered transcripts so that he could review the transcripts and get up to speed. Those were very expensive for the state to pay for. We are also paying for your attorney, which is appropriate, because you should be represented, as I advised you. Your choice of attorney is another question. Unless there is some good cause, which would involve a specific conflict of interest, or something of that nature, where the client-attorney relationship has totally broken down, there is no way you are going to get another attorney. We are here today for trial. Mr. Collins is

---

contain a docket number, an order page and was not certified as having been sent to all parties, among other things. See Practice Book § 11-1. The document in the appendix is not contained in the record and is not listed on the trial court docket sheet. Because the court did not have the letter to which it referred marked for identification, we cannot be certain that the document in the appendix of the father's brief is the document at issue.

In his brief on appeal, the father faults the court for failing to read his "motion" into the record. We agree with the father that the court should have read the letter into the record and marked it for identification. It is the appellant's duty, however, to provide this court with an adequate record for review. See Practice Book § 61-10. The father failed to file a motion for rectification regarding the letter to complete the record. See Practice Book § 66-5.

ready. I can assure you he is a very competent attorney. He has worked in this system for many years. He can handle your case well. You may not like what he is telling you, but he can handle your case.

"Sometimes the advocacy portion of what an attorney is supposed to do may not be to your liking because the advisory or counseling portion of what an attorney is also supposed to do may be something that is not quite what you feel is appropriate. But, believe me, there is a reason. He is a professional and you are not. There are certain reasons why he tells you certain things, and you may not like to hear what he is telling you, but it is really necessary to hear it and try to internalize it and try to rely on his advice, because that is what he is here for, and that is why the state feels it is important that you have someone who has legal training to help you in the case." Collins continued to represent the father at the proceedings on February 1 and 4, 2008, with no further concerns raised by the father.

The father does not claim that the state failed to provide him with counsel but contends that he was deprived of the due process right to the effective assistance of counsel. In *State* v. *Anonymous*, 179 Conn. 155, 159, 425 A.2d 939 (1979), our Supreme Court "addressed, as a matter of first impression, whether the right to effective assistance of counsel inures to a parent at a termination hearing. Therein, [it] concluded that neither the sixth amendment to the United States constitution nor article first, § 8, of the Connecticut constitution can be extended [beyond criminal cases] to a parent in a termination of parental rights hearing to provide a right to effective assistance of counsel." (Internal quotation marks omitted.) *In re Jonathan M.*, supra, 255 Conn. 224–25. A parent "is constitutionally entitled to the effective assistance of counsel only if he had a

constitutional right to appointed counsel in the termination proceeding." Id., 225.

"In deciding whether due process required the appointment of counsel to an indigent parent in a termination proceeding, the [United States] Supreme Court balanced three factors enunciated in *Mathews* v. *Eldridge*, [supra, 424 U.S. 335]. See *Lassiter* v. *Dept. of Social Services*, [452 U.S. 18, 27, 101 S. Ct. 2153, 68 L. Ed. 2d 640 (1981)]. First, the court determined that [a] parent's interest in the accuracy and justice of the decision to terminate his or her parental status is . . . a commanding one. . . . Second, the court considered the government's interest in the welfare of the child and its interest in avoiding the costs associated with lengthy termination proceedings, and concluded that they were hardly significant enough to overcome private interests as important as those here. . . . Finally, the court examined the risk that a parent will be erroneously deprived of his or her child because the parent is not represented by counsel . . . and concluded that the complexity of the proceeding and the incapacity of the uncounseled parent could be, but would not always be, great enough to make the risk of an erroneous deprivation of the parent's rights insupportably high.

"Weighing these interests against the presumption that due process does not require appointed counsel in the absence of the potential for losing one's physical liberty, the court ultimately decided to leave the decision [of] whether due process calls for the appointment of counsel for indigent parents in termination proceedings to be answered in the first instance by the trial court, subject, of course, to appellate review." (Citations omitted; internal quotation marks omitted.) *In re Jonathan M.*, supra, 255 Conn. 226–27. In *In re Jonathan M.*, our Supreme Court did not decide whether the *Mathews* factors tipped the balance in favor of a due process right for indigent parents to effective appointed

counsel, as the question had not been addressed by the trial court. Id., 227. In the case before us now, the trial court was not asked to address and, therefore, did not address the *Mathews* factors with regard to whether the father was entitled to the due process right for indigent parents to effective, appointed counsel during the hearing on the motion to transfer guardianship of his three children.[11] We, therefore, will not decide the father's claim on appeal.

II

The father's second claim is that the court improperly transferred custody of the children from their mother to their maternal grandmother, a resident of California. The father further claims that the transfer was not in the best interests of the children because (1) the mother also resides in the maternal grandmother's home without the benefit of substance abuse services, (2) no independent study of the children's living situation was placed into evidence and (3) the denial of a visitation order for the father deprives the children of a mental and physical connection with him. Again, we are unable to review the father's claims because the record is inadequate. With respect to the father's first and third claims, the father failed to seek an articulation of the court's judgment transferring the guardianship of the children to their maternal grandmother. See Practice Book § 66-5. As to his second claim concerning the family study conducted in California, the study is not part of the record and the father did not seek to have it made part of the record at trial or file a motion for rectification thereafter. See Practice Book § 66-5. The appellant is responsible for providing an adequate record for our review. See Practice Book § 61-10.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[11] As noted, the court ensured that the father was represented by counsel throughout the proceeding.